**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DAVID WYATT JONES,

               Petitioner,

v.                                         Case No. 3:07-cv-146-J-32

WALTER A. MCNEIL, etc.,

               Respondent.

_____

## ORDER[1]

### I. Status

      Petitioner David Wyatt Jones is a death-sentenced inmate of the Florida penal system who is represented by counsel. He is proceeding in this action on a Petition (Doc. #1) for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner also filed Petitioner's Memorandum of Law in Support of Habeas Corpus Petition (Doc. #2) (hereinafter Petitioner's Memorandum). Petitioner challenges his 1997 state court (Duval County) judgment of conviction for first degree murder, robbery and kidnapping.

      The following fifteen grounds are raised in the Petition:

### GROUND I

THE TRIAL COURT ERRED IN DENYING PETITIONER'S MOTION TO SUPPRESS STATEMENTS SINCE PETITIONER HAD REASSERTED HIS RIGHT TO COUNSEL AND THE

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the matters addressed herein and is not intended for official publication or to serve as precedent.

STATEMENTS WERE OBTAINED IN VIOLATION OF HIS RIGHTS UNDER <u>EDWARDS V. ARIZONA</u>.[2]

## GROUND II

THE TRIAL COURT ERRED [IN] OVERRULING DEFENSE OBJECTIONS AND IN DENYING A MOTION FOR MISTRIAL WHEN DETECTIVE PARKER COMMENTED ON PETITIONER'S RIGHT TO REMAIN SILENT.

## GROUND III

THE PROSECUTOR IMPROPERLY ATTACKED JONES' CHARACTER AT TRIAL BY ELICITING PREJUDICIAL, IRRELEVANT AND INFLAMMATORY EVIDENCE WHICH SUGGESTED THAT JONES MIGHT HARBOR RACIAL PREJUDICES AGAINST AFRICAN-AMERICANS.

## GROUND IV

THE TRIAL COURT ERRED IN SUBMITTING JONES' MURDER CHARGE TO THE JURY ON THE THEORY OF PREMEDITATION SINCE THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH A PREMEDITATED MURDER.

## GROUND V

THE TRIAL COURT ERRED IN EXCLUDING AS IRRELEVANT THE TESTIMONY OF A DEFENSE WITNESS WHO WAS TO TESTIFY DURING THE PENALTY PHASE ABOUT THE IMPACT OF CRACK COCAINE ADDICTION BASED ON HIS OWN EXPERIENCE AS A FORMER ADDICT AND HIS BACKGROUND AS A PSYCHIATRIST WHO TREATS ADDICTS.

---

[2] <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981) (finding that where a defendant had invoked his right to have counsel present during a custodial interrogation, a valid waiver of that right could not be established by showing only that he responded to a police-initiated interrogation after being again advised of his rights; thus, use of the defendant's confession against him at his trial violated his rights under Fifth and Fourteenth Amendments to have counsel present during a custodial interrogation).

## GROUND VI

THE TRIAL COURT ERRED IN ALLOWING THE STATE TO INTRODUCE INFLAMMATORY EVIDENCE DURING THE PENALTY PHASE ABOUT THE PETITIONER'S PRIOR MURDER CONVICTION THEREBY IMPERMISSIBLY MAKING THE PRIOR MURDER A FEATURE OF THE PENALTY PHASE TRIAL.

## GROUND VII

THE TRIAL COURT ERRED IN REFUSING TO ALLOW JONES' PRIOR ATTORNEY IN THE PREVIOUS MURDER CASE TO TESTIFY ABOUT THE PSYCHIATRIC REPORT PREPARED BY DR. MILLER IN THAT CASE, WHICH RESULTED IN JONES['] BEING FOUND INCOMPETENT TO STAND TRIAL, ON THE GROUND THAT THE TESTIMONY WAS HEARSAY.

## GROUND VIII

THE TRIAL COURT ERRED IN FINDING AS AN AGGRAVATING CIRCUMSTANCE THAT THE HOMICIDE WAS COMMITTED TO AVOID ARREST.

## GROUND IX

THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION TO WITHDRAW AFTER A PRE-SENTENCE INVESTIGATION REPORT PREPARED BEFORE THE PENALTY PHASE PORTION OF THE TRIAL COMMENCED REVEALED A STATEMENT JONES GAVE THE PREPARER OF THE REPORT WHICH CREATED A CONFLICT OF INTEREST FOR COUNSEL IF HE REMAINED IN THE CASE.

## GROUND X

THE TRIAL COURT ERRED IN PERMITTING THE STATE TO INTRODUCE VICTIM IMPACT EVIDENCE IN THE PENALTY PHASE OF THE TRIAL BECAUSE THE EVIDENCE WAS INFLAMMATORY AND THE STATUTE PERMITTING VICTIM IMPACT EVIDENCE IS UNCONSTITUTIONAL.

## GROUND XI

THE TRIAL COURT ERRED IN READING AN UNCONSTITUTIONAL JURY INSTRUCTION TO DEFINE THE HEINOUS, ATROCIOUS OR CRUEL AGGRAVATING CIRCUMSTANCE.

## GROUND XII

THE TRIAL COURT ERRED IN INSTRUCTI[NG] THE JURY THAT AN AGGRAVATING CIRCUMSTANCE COULD BE BASED ON THE CONVICTION FOR THE UNDERLYING FELONY FOR THE FELONY MURDER THEORY OF THE PROSECUTION AND IN FINDING THE UNDERLYING FELONY AS AN AGGRAVATING CIRCUMSTANCE.

## GROUND XIII

THE TRIAL COURT ERRED IN NOT DECLARING SECTION 921.141 AND 922.10 UNCONSTITUTIONAL BECAUSE IMPOSITION OF A DEATH SENTENCE BY ELECTROCUTION IS CRUEL AND UNUSUAL PUNISHMENT.

## GROUND XIV

THE HEARING COURT ERRED IN FAILING TO GRANT APPELLANT RELIEF AT THE CONCLUSION OF THE EVIDENTIARY HEARING ON THE BASIS THAT COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL.

## GROUND XV

IN PETITIONER'S DIRECT APPEAL TO THE FLORIDA SUPREME COURT, APPELLATE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO RAISE VIABLE ISSUES THAT WOULD HAVE RESULTED IN PETITIONER'S CONVICTION AND SENTENCE BEING OVERTURNED BY THE FLORIDA SUPREME COURT AND A NEW TRIAL BEING ORDERED. THE FAILURE TO RAISE THESE ISSUES BY APPELLATE COUNSEL WAS A VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

Petition at 73, 80, 82, 87, 89, 92, 94, 96, 99, 102, 104, 107, 109, 111, 153.

The Respondent filed an Answer to Petition for Writ of Habeas Corpus (Doc. #15) (hereinafter Response). Petitioner's Reply to Answer to Petition for Writ of Habeas Corpus (Doc. #17) (hereinafter Reply) was filed thereafter. This case is ripe for review.

## II. Procedural History

On February 21, 1995, Petitioner was indicted for first degree murder, robbery and kidnapping. Vol.[3] 1 at 3-4. On March 21, 1997, after a trial by jury, Petitioner was found guilty as charged. Vol. 2 at 679-81. The Florida Supreme Court summarized the evidence presented at Petitioner's trial and the trial proceedings as follows:

> David Jones, who was thirty-six years old at the time of the crime, was convicted of the first-degree murder of Lori McRae. The evidence at trial revealed that McRae was abducted from a parking lot in the early morning hours of January 31, 1995. Her body was found abandoned in a wooded area in a neighboring county. The most likely cause of death was ligature strangulation.
>
> The evidence revealed that over the two days following her abduction, Jones stole $600 from McRae's ATM account. The first withdrawal, for $300, occurred at 3:09 a.m. on the morning of the murder. Jones was captured on the film of the bank's security camera while making that transaction. Jones eventually attempted over 100 withdrawals in the next two days, but only eleven were successful. Jones was apprehended on

---

[3] The Respondent submitted twelve bound volumes of exhibits in support of the Response. The Court will refer to these volumes as "Vol." Respondent tabbed several portions of these volumes (Tab A through Tab MM). The Court will cite the page numbers imprinted on the bottom right corner of each page in Volumes 1-5 and the page numbers imprinted on the upper right corner of each page in Volumes 6-9. With respect to Volumes 10-12, the Court will cite the Volume number, followed by the letter of the relevant Tab, followed by the relevant page number(s).

February 1 near an ATM machine that police were staking out. At the time, he was driving McRae's Chevy Blazer.

When Jones was arrested he had bloody scratches on his face and reddish stains on his jeans, which later DNA testing revealed "almost conclusively" was McRae's blood. Traces of blood were found in the Blazer as well. The State also presented the testimony of two automobile detailers who testified that Jones attempted to have the interior of the Blazer cleaned on the day after McRae's disappearance.

After his arrest, Jones was transported to police headquarters and questioned by Detective Parker of the Jacksonville Sheriff's Office, the lead investigator in the case. Jones was properly advised of his rights under Miranda[4], and initially denied his involvement in McRae's disappearance. He eventually terminated the interview, invoking his right to remain silent and asking to speak with his attorney. Twenty days later, Jones confessed to Detective Parker that he committed the murder and accompanied police to the location where he had hidden McRae's body. . . .

McRae's body was badly decomposed; thus, an exact determination of the cause of her death was difficult. The medical examiner opined that she died as a result of "ligature strangulation." Her body exhibited multiple bruises and defensive wounds, and there was a blood stain on her jacket.

There was a rope tied around Mc[R]ae's ankles, a cord tied around her neck, and on top of the cord a sleeve from a black sweater. The sleeve from the sweater matched a sweater owned by Jones' wife, and rope found in the trunk of Jones' automobile was of the same type as the rope around McRae's ankles. McRae had on jeans, which were unzipped, exposing her pubic area and buttocks. Whether McRae had been sexually abused could not be determined due to decomposition of the genital area. McRae also had on a blouse, which was missing some buttons. Two buttons later found in McRae's vehicle were from that blouse.

---

4 Miranda v. Arizona, 384 U.S. 436 (1966).

The jury returned a verdict of guilt of first-degree murder, robbery, and kidnapping. During the penalty phase, several witnesses testified regarding Jones' addiction to crack cocaine, use of other drugs, and the effect of these drugs on Jones' personality. According to the testimony, Jones began "drinking and drugging" when he was fourteen or fifteen years old. Jones' wife reported that he began serious abuse of illegal substances in 1986, when he began "shooting up" cocaine and dilaudid. He began smoking crack cocaine in 1994, quickly escalating to the point where he spent all his time seeking and smoking crack, often neglecting to eat, bathe, or sleep. Jones' wife testified that they financed their crack habit with extensive shoplifting.

Defense counsel also called Drew Edwards to testify as an expert in the penalty-phase proceedings. Edwards offered his testimony as an expert regarding the effect of cocaine on the brain. Edwards testified that Jones was a crack addict, suffering from these symptoms. Edwards made clear that he did not believe addiction to cocaine is an excuse for crime, yet he admitted that a cocaine addict would suffer impairment of his ability to conform his conduct to the requirements of the law. Edwards testified that despite his addiction, Jones would have always known the difference between right and wrong.

Another defense expert testified that Jones has an I.Q. of 78, placing him between the fifth and ninth percentiles of the population. The expert testified that standardized tests revealed that Jones had little ability to control his impulses, but admitted that his motivation to get the right answer during his testing appeared to "vary." She opined that he was able to conform his conduct to the requirements of the law, "provided he's not impaired in some other way."

The penalty-phase testimony also revealed that Jones was previously convicted of the murder of Jasper Highsmith in 1986 in Duval County, Florida. The murder was committed after Jones escaped from jail where he was being held on a burglary charge. Jones was found guilty of second-degree murder and sentenced to twenty years in prison. He was released from prison in 1992, after serving only six years. According to the presentence investigation report, not submitted to the jury, Jones' criminal history also included convictions for disorderly

conduct, burglary, drug possession, DUI, resisting arrest, and shoplifting.

At the conclusion of the penalty-phase proceedings, the jury recommended the death penalty by a vote of nine to three. The trial court accepted the jury's recommendation and sentenced Jones to death. The trial court found the following four aggravators: (1) that the murder was committed during the course of a kidnapping and a robbery; (2) that Jones had previously been convicted of a violent felony (murder); (3) that the murder was heinous, atrocious or cruel (HAC); and (4) that the murder was committed to avoid arrest. The court found the following statutory mitigators, which it gave "some weight": (1) that Jones' capacity to appreciate the criminality of his conduct was substantially impaired; and (2) that the capital felony was committed while Jones was under the influence of extreme mental or emotional disturbance.

The court also found the following nonstatutory mitigators, which it gave "some weight": (1) that Jones was a crack addict; (2) that Jones is the father of a teenaged son and was a good worker and good provider when he was not using drugs on a regular basis; and (3) that jail records after the arrest for the McRae murder indicated that he had exhibited signs of a "psychotic episode." However, as the trial court found in its sentencing order, records one day after the date of Jones' arrest indicated that he showed no signs of mental illness, and no evidence was presented that he was incompetent to proceed or insane at the time of the crime.

Jones v. State, 748 So.2d 1012, 1016-17 (Fla. 1999) (per curiam).

On direct appeal, Petitioner presented the following issues:

(1) Whether his confessions introduced against him were obtained in violation of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); (2) whether the defendant is entitled to a new trial based on Detective Parker's testimony regarding Jones' invocation of his right to remain silent; (3) whether Detective Parker's reference to a racial slur used by the defendant during his statement to police and reference to a spider tattoo on his arm allegedly linked with unrelated racial killings require a new trial; (4) whether the evidence was

sufficient to establish premeditated murder; (5) whether the trial court committed reversible error in refusing to allow the testimony, during the penalty phase, of a witness who would testify about the impact of crack cocaine; (6) whether the admission of details and photographs regarding the defendant's prior murder conviction requires a new penalty-phase proceeding; (7) whether the trial court's refusal to allow the defendant's prior counsel to testify regarding a psychiatric report prepared in 1986 finding the defendant incompetent requires a new trial; (8) whether the evidence supports the avoid arrest aggravator; (9) whether the trial court erred in denying Jones' counsel's motion to withdraw prior to the penalty phase proceeding; (10) whether the trial court erred in allowing the State to introduce victim impact evidence; (11) whether a new penalty phase is required for the trial court's substitution of "or" for "and" in the HAC instruction to the jury, and whether the HAC instruction is unconstitutional; (12) whether the trial court erred in instructing the jury that an aggravating circumstance could be based on the felony underlying the felony-murder conviction; and (13) whether the death penalty is unconstitutional.

Id. at 1017 n.3. On November 12, 1999, the Florida Supreme Court affirmed Petitioner's conviction and death sentence. Id. at 1028. Rehearing was denied January 12, 2000. Vol. 10, Tab BB.

Petitioner filed a petition for writ of certiorari to the United States Supreme Court, raising the following issue: whether a custodial interrogation is sufficiently imminent so as to permit the invocation of the right to counsel protections of Miranda when an in-custody defendant, who is represented by counsel, asks to see his lawyer and the police detective investigating his case for the purpose of giving a statement about the offense for which he is charged? Vol. 10, Tab Z. The petition for writ of certiorari was denied on June 12, 2000. Jones v. Florida, 530 U.S. 1232 (2000).

On June 12, 2001, Petitioner filed a motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850 (hereinafter 3.850 motion). Vol. 11, Tab CC. He filed an amended 3.850 motion on April 28, 2003, in which he included the ineffective assistance of counsel claims raised in the Petition before this Court. Vol. 11, Tab DD. The circuit court conducted an evidentiary hearing. Vol. 11-12, Tab FF. On October 27, 2004, the circuit court denied the 3.850 motion, as amended. Vol. 11, Tab GG. Petitioner appealed the denial of the 3.850 motion to the Florida Supreme Court. He also filed a petition for writ of habeas corpus in the Florida Supreme Court, in which he raised the same three ineffective assistance of appellate counsel claims he raises in the Petition before this Court. Vol. 12, Tabs HH and KK. On December 14, 2006, the Florida Supreme Court affirmed the order denying the 3.850 motion and denied the petition for writ of habeas corpus. Jones v. State, 949 So.2d 1021 (Fla. 2006) (per curiam); Vol. 12, Tab JJ. Rehearing was denied on February 15, 2007. The mandate was issued on March 5, 2007,[5] the same day that Petitioner filed the Petition in this Court. Thus, this action was timely filed in this Court. See 28 U.S.C. 2244(d)(1).

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold

---

[5] A review of the Florida Supreme Court's docket reveals that the mandate was issued on March 5, 2007. See http://jweb.flcourts.org/docket.

an evidentiary hearing." Id.  The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## IV.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication[6] resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable[7] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Marquard, 429 F.3d at 1303. The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d 482

---

[6] For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).

[7] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 550 U.S. at 473 (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

(2006) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)); <u>Osborne v. Terry</u>, 466 F.3d 1298, 1305 (11th Cir. 2006).

<u>Id</u>. at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' § 2254(e)(1)." <u>Schriro</u>, 550 U.S. at 473-74. This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

## V. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner contends that the trial court erred in denying Petitioner's motion to suppress statements since he had reasserted his right to counsel and the statements were obtained in violation of <u>Edwards v. Arizona</u>. Petition at 73-79; Petitioner's Memorandum at 2-7. Petitioner raised this issue on direct appeal, <u>see</u> Vol. 10, Tab W at 36-45, and the Florida Supreme Court adjudicated the claim as follows:

> In his first point on appeal, Jones argues that his confession to Detective Parker and two statements to corrections officers were admitted against him at trial in violation of his constitutional rights. For the reasons that follow, we conclude that reversal is not warranted on this point.
>
> When Jones was first questioned, on February 1, 1995, he asserted his right to silence and his right to an attorney. As the United States Supreme Court and this Court have made clear, once a defendant has invoked his or her right to counsel, a defendant is no longer subject to police interrogation until

counsel has been made available or the suspect initiates further communication with the police. See Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); State v. Owen, 696 So.2d 715, 719 (Fla. 1997). If the suspect subsequently voluntarily initiates contact or communication with the police and validly waives the right he or she had previously invoked, police interrogation can resume. See Smith v. Illinois, 469 U.S. 91, 94-95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984); Jennings v. State, 718 So.2d 144, 149-50 (Fla. 1998), cert. denied, 527 U.S. 1042, 119 S.Ct. 2407, 144 L.Ed.2d 805 (1999).

After invoking his right to counsel on February 1, Jones reinitiated contact with law enforcement officials by asking to speak with Detective Parker on February 17. Detective Parker was unavailable at that time, but later, on February 21, went to the jail in response to Jones' request. On February 21, Jones waived his Miranda rights; however, he again denied murdering McRae and provided a location for her body that Detective Parker subsequently found to be inaccurate.

Jones' request to speak with Parker on the 21st was a voluntary initiation of contact within the meaning of Edwards. After initiating this contact, Jones then validly waived his rights. It is uncontroverted that the statements made to Detective Parker after this reinitiation and waiver concerning the location of the body were admissible against Jones. Jones argues, however, that the remainder of the statements and confessions Jones made later that same day, first to two correctional officers and then to Detective Parker, were erroneously admitted against him because he subsequently invoked his right to counsel.

We address in turn the factual underpinnings of the statements to the correctional officers and then to Detective Parker. The testimony reveals that after providing Detective Parker with the inaccurate location for McRae's body, Jones returned to his cell while Detective Parker went to search that location. Later that same day, Jones volunteered to a correctional officer guarding his cell block that he wanted to confess to the crime and tell where the body could be found. The correctional officer called his supervisor.

When the supervisor arrived, Jones was very emotional and again volunteered, without having been asked any

13

questions, that his mother told him to confess and that he wanted to show police the location of the body and "get right with God." He then stated that he wanted "to talk to his mother, his attorney, and Detective Parker." Jones then "kept going on" until the supervisor interrupted him to advise him of his constitutional rights and his right to make a phone call.[8]

The supervisor then called Detective Parker as requested by Jones. The supervisor asked Officer Vonk to watch over Jones while they waited for Detective Parker to arrive. Jones was very agitated. Jones asked Vonk whether, if he told where the body was, he would be able to speak to his mother. The officer told him that he did not have authority to make that kind of decision. Jones then confessed to the crime.

Jones told Vonk that he had choked the victim, described the woods where the body was located, and told the officer that he wanted to tell Detective Parker where the body could be found. At some time during his contact with the officer, he said that he would like to speak with his attorney "to arrange to either [sic] for the attorney to see my mother or for me to see my mother."[9] Vonk testified that he did not believe that Jones was indicating that he wanted his attorney present. Although most of Jones' statements were spontaneously made to Vonk, Vonk did testify that he asked Jones whether and how he killed the victim. However, Vonk could not be sure if these questions occurred before or after Jones mentioned his attorney or before or after he confessed to the crime.

Soon thereafter, Detective Parker responded to the supervisor's call and arrived at the jail as Jones had requested. When Detective Parker arrived at the jail, Jones approached Parker, told him that he needed to talk to him and "tell him about it." Parker testified that Jones "just started talking right then." Parker had said nothing to Jones and had not asked any questions when Jones began volunteering this information. Parker then interrupted Jones and asked if he had been advised

---

[8] The testimony of the supervisor, Sergeant Beverly Frazier, at the hearing on the motion to suppress is contained in Vol. 3 at 1303-33.

[9] See Vol. 3 at 1351.

of his rights. Jones said he had been advised of and understood his rights, but that he wanted to talk and tell where the body could be located.

In analyzing whether any of these confessions and statements should have been suppressed, we first note that it is conceded that Jones reinitiated contact with Detective Parker early in the day on the 21st, after having invoked his rights on the 1st, and that this reinitiation and subsequent waiver were valid. Thus, the question becomes whether Jones was subject to interrogation when he made subsequent statements regarding his counsel and, if so, whether these references to an attorney constituted an unequivocal request for counsel so as to require that all questioning cease.

As to the issue of interrogation, <u>Miranda</u> only applies when a defendant is subject to custodial interrogation. <u>See Traylor v. State</u>, 596 So.2d 957, 966 (Fla. 1992) ("Once a suspect has requested the help of a lawyer, no state agent can reinitiate interrogation on any offense throughout the period of custody unless the lawyer is present, although the suspect is free to volunteer a statement to police on his or her own initiative at any time on any subject in the absence of counsel.") (emphasis supplied); <u>see</u> <u>also</u> <u>Smith</u>, 469 U.S. at 95, 105 S.Ct. 490 ("[I]f the accused invoked his right to counsel, courts may admit his responses to further questioning" only if he initiated further discussion with police and then waived his rights.); <u>Hauser v. State</u>, 701 So.2d 329, 331 (Fla. 1997); <u>Christmas v. State</u>, 632 So.2d 1368, 1370 (Fla. 1994) ("When, however, a defendant voluntarily initiates a conversation with law enforcement officers in which a defendant provides information about that defendant's case, <u>Miranda</u> warnings are not required.").

The first statement Jones made to the supervisor that he wanted to speak "to his mother, his attorney, and Detective Parker" was not made during interrogation. As the uncontroverted testimony reveals, Jones volunteered his statements to the supervisor, who had asked him no questions before he made this statement.

Even assuming the statements to the supervisor were made in the course of an interrogation, the statement made

regarding his attorney was not an unequivocal request for counsel. As this Court explained in <u>Owen</u>, once there has been a knowing and voluntary waiver of the <u>Miranda</u> rights, as there was in this case earlier in the day when Jones provided the incorrect location of the body to Detective Parker, "law enforcement officers may continue questioning until and unless the suspect clearly [unequivocally] requests an attorney." <u>Owen</u>, 696 So.2d at 719 (quoting <u>Davis v. United States</u>, 512 U.S. 452, 461, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994)). If the alleged statement is at best an "equivocal or ambiguous request," the questioning may continue. <u>Owen</u>, 696 So.2d at 719.

The trial court characterized Jones' spontaneous statement that he wanted "to talk to his mother, his attorney, and Detective Parker," as a statement made in passing.[10] Based on our review of the record, we agree with the trial court's findings, especially considering that Jones kept "going on" after the statement and had repeatedly made clear that he wanted to speak with Parker and divulge the location of the body.

---

[10] Petitioner filed a Motion to Suppress Statements, Admissions and Confessions on August 7, 1995. Vol. 1 at 35. The trial court held a hearing on the motion. Vol. 3 at 1224-1370, 1387-1422. During argument on the motion, the trial court noted that "it was kindly [sic] in [a] passing way that he wanted to talk to the lawyer like he said he wanted to talk to Parker, the detective, his mother, maybe in between there the lawyer." <u>Id</u>. at 1411. The trial court made the following findings after the parties presented their argument on the motion:

As to the motion to suppress statements and admissions made by the defendant I deny that. I think that all the contact that was made by the defendant was initiated by the defendant himself. I don't think there's been any wrong doing on behalf of the Sheriff's Office or the corrections officers. Each time the contact came about it directly resulted from the contact made by the defendant Jones, and each case throughout these proceedings he was advised of his rights in addition to all these other times exhibits one, two and five which has been part of this hearing he acknowledged in writing that he understood his constitutional rights, so motion to suppress denied.

<u>Id</u>. at 1426. A written order denying the motion was entered the same day (September 1, 1995). Vol. 1 at 37.

We agree that the statement was not an unequivocal request for counsel but was at most an equivocal statement regarding counsel. See Owen, 696 So.2d at 719. Taken in context, Jones' statement was not an expression of a desire to have his attorney present during questioning and deal with police only through counsel. See, e.g., Long v. State, 517 So.2d 664, 667 (Fla. 1987) ("I think I might need an attorney" was equivocal request for counsel), receded from on other grounds, Owen, 696 So.2d at 720; Waterhouse v. State, 429 So.2d 301, 305 (Fla. 1983) (interrogation did not have to cease when accused stated "I think I want to talk to an attorney before I say anything else" because the defendant did not express a desire to deal with the police only through counsel), receded from on other grounds, Owen, 696 So.2d at 720.

We now turn to the exchange with Officer Vonk, which occurred after the supervisor asked Officer Vonk to watch over Jones while they waited for Parker to arrive. As to the issue of whether this exchange was an "interrogation" within the meaning of Miranda, it is clear that Jones initiated contact with Officer Vonk and volunteered his admission to the crime. However, it is also clear that some time during his encounter with Jones, Vonk asked whether and how he killed the victim.

In Christmas, we considered a somewhat similar factual scenario where a defendant initiated conversation with two court bailiffs, who we found to be law enforcement officers for purposes of Miranda. Although it was undisputed that one of the bailiffs asked the defendant who "did the shooting" in the case, whereupon the defendant made incriminating statements, we concluded that the strictures of Miranda did not apply:

> Miranda and its progeny require that Miranda warnings be given whenever custodial interrogation takes place. This is because of the coercive conditions that are inherent when suspects are questioned by "captors, who appear to control the suspect's fate, [and who] may create mutually reinforcing pressures that the Court has assumed will weaken the suspect's will." When, however, a defendant voluntarily initiates a conversation with law enforcement officers in which a defendant provides information about that

17

defendant's case, <u>Miranda</u> warnings are not required. Although the bailiff's question was probably improper, under the circumstances we cannot say that <u>Miranda</u> warnings were required. Christmas voluntarily initiated the conversation at issue and the bailiff's question was not asked as the result of circumstances in which mutually reinforcing pressures were present so as to weaken Christmas's will.

<u>Christmas</u>, 632 So.2d at 1370-71 (alteration in original) (citations omitted).

Even if we were to conclude in this case that Jones was subjected to "interrogation" by Vonk, we would nonetheless conclude that Jones' statement to Vonk was not an unequivocal request for counsel that required cessation of any interrogation. <u>See</u> <u>Owen</u>, 696 So.2d at 719. Jones' statement that he wanted to speak with his attorney "to arrange to either [sic] for the attorney to see my mother or for me to see my mother" was not a request or indication that the interviews and questioning cease, or that Jones wished only to communicate through counsel. <u>See</u> <u>Waterhouse</u>, 429 So.2d at 305. In fact, the request appears directed more towards securing the company of his mother.

The record is clear throughout these exchanges with the supervisor and Officer Vonk that Jones repeatedly expressed his desire to confess his involvement in the crime, get the crime "off his chest," and "get right with God." He repeatedly volunteered his involvement in the crime and his desire to divulge the location of the victim's body. Under these circumstances, <u>Edwards</u> is not violated.

Finally, as to Jones' ultimate confession to Detective Parker when Parker arrived in response to Jones' request, it is uncontradicted that Jones approached Parker and told him he wanted to confess. Parker interrupted Jones and asked if he had been read and understood his rights. Jones said that he had and that he wanted to talk. Jones ultimately led Parker to the location of the body, where he executed a written waiver of his rights and specifically acknowledged that he had been administered his rights before being questioned by Parker. Thus,

we conclude that the confession to Detective Parker was clearly admissible. Further, even if the two prior statements should not have been admitted, their admission would be rendered harmless by the proper admission of this final confession. See Davis v. State, 698 So.2d 1182, 1189 (Fla. 1997).

Jones' argument that this confession should have been suppressed due to the preceding alleged requests for counsel is unavailing, considering, as we have explained, that neither of the preceding "requests" were unequivocal requests for counsel. Based on all the foregoing, we agree with the trial court that under the circumstances of this case there was no error in the admission of Jones' confessions. Accordingly, Jones is not entitled to relief on this point.

Jones v. State, 748 So.2d at 1018-21 (footnote omitted).

Because there is a qualifying decision from the state appellate court, this Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002). Upon a thorough review of the record and the applicable law, it is clear that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

## B. Ground Two

Petitioner contends that the trial court erred in overruling defense objections and in denying a motion for a mistrial when Detective Parker commented on Petitioner's right to remain silent. Petition at 80-81; Petitioner's Memorandum at 8-10. Petitioner raised this issue on direct appeal, see Vol. 10, Tab W at 46-48, and the Florida Supreme Court adjudicated this claim as follows:

> In his second point on appeal, Jones argues that he is entitled to a new trial because Detective Parker testified at trial that the first interrogation ended when Jones invoked his right to remain silent.[11] The State concedes that this testimony was an improper comment on Jones' right to remain silent but maintains that the comment was harmless. We agree with the State's concession of error but also agree with the State that the error is harmless beyond a reasonable doubt.

> In State v. DiGuilio, 491 So.2d 1129, 1137-38 (Fla. 1986), we explained that improper comments on a defendant's invocation of his right to remain silent are subject to a harmless error analysis and need not require reversal if the Court is convinced, beyond a reasonable doubt, that the error did not contribute to the verdict. In this case, although the witness did improperly comment on the defendant's invocation of his right to silence, the remark was neither repeated nor emphasized. Further, the evidence against Jones included his confession to the crime, the fact that McRae was last seen alive with Jones before she disappeared, and the fact that Jones was arrested driving her vehicle with blood on his clothes and scratches on his face. The evidence also revealed that he attempted to use her ATM card and confidential ATM code over 100 times and was able to successfully withdraw over $600 between the time she was last seen alive and the time he was arrested just two days later. Considering this evidence and the fact that the error here was not repeated or emphasized, we are convinced "beyond a

---

[11] Detective Parker testified that the Petitioner stated, "I want to stop talking and I want a lawyer." Vol. 8 at 1321-22.

reasonable doubt that the . . . error complained of did not contribute to the verdict." Id. at 1135. Accordingly, reversal is not required on this point.

Jones v. State, 748 So.2d at 1021-22.

Upon a thorough review of the record and the applicable law, it is clear that the state court's adjudication of this claim was not contrary to clearly established federal law,[12] did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

## C. Ground Three

Petitioner contends that the prosecutor improperly attacked Petitioner's character at trial by eliciting prejudicial, irrelevant and inflammatory evidence which suggested that Petitioner might harbor racial prejudices against African-Americans. Petition at 82-85; Petitioner's Memorandum at 11-14. Petitioner raised this issue on direct appeal, see Vol. 10, Tab W at 49-54, and the Florida Supreme Court adjudicated this claim as follows:

> In his third point on appeal, Jones argues that he is entitled to a new trial because the prosecution introduced irrelevant evidence suggesting that Jones harbored a racial prejudice against African-Americans. This alleged error arose in the context of Jones' first statement to police, where he

_____

[12] "[T]he [United States Supreme] Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations." United States v. Hasting, 461 U.S. 499, 509 (1983) (citations omitted). In Hasting, the Court found that, in view of the overwhelming evidence against the defendant, the prosecutor's reference to the defendants' failure to testify was harmless beyond a reasonable doubt. Id. at 511. In this case, the evidence against Petitioner was overwhelming. Thus, the Florida Supreme Court properly found that the isolated comment by Detective Parker was harmless beyond a reasonable doubt.

21

denied his involvement in the murder, but attempted to explain the scratches on his face as resulting from a fight with two black males. Jones referred to the two men using a racial slur. The defense moved in limine to prevent Parker from repeating the racial slur when relating Jones' statement to the jury, arguing that it was not relevant and highly inflammatory. The trial court denied the motion, but informed the prosecutor that the witness could use the racial slur only once during his testimony. When Detective Parker testified, he did not actually use the racial slur, but made clear when quoting the defendant's statement that the defendant was "was [sic] talking about black guys," and "used a racial slur."[13]

In arguing that this testimony constituted reversible error, Jones relies on Robinson v. State, 520 So.2d 1 (Fla. 1988), and McBride v. State, 338 So.2d 567 (Fla. 1st DCA 1976). Both cases are distinguishable. In McBride, the First District reversed and granted a judgment of acquittal based on insufficient evidence. The court went on, however, to condemn the conduct of the prosecutor who elicited testimony of the specific racial obscenity uttered by the defendant:

> Such alleged statement had no relevance to the case being tried but was undoubtedly offensive to two members of the jury who were of the black race. The effect of this remark attributed to appellant was to prejudice her in the eyes of the jury-particularly the two black members.

McBride, 338 So.2d at 568. The First District found that the trial court abused its discretion in refusing to deny a motion for mistrial not only as to this irrelevant prejudicial testimony, but also because the prosecutor introduced improper speculation regarding the defendant's prior criminal activities. See id. at 568-69.

In Robinson, the prosecutor elicited testimony during the penalty phase of the black defendant's trial suggesting that the defendant had a hostility towards white women and had committed previous sexual assaults on white women. 520 So.2d

---

[13] See Vol. 8 at 1300.

at 6. The murder victim in that case was a white woman. <u>See</u> <u>id</u>. We concluded in <u>Robinson</u> that the prosecutor's questioning of the expert was an attempt to insinuate that the defendant had a habit of preying on white women and "thus constituted an impermissible appeal to bias and prejudice." <u>Id</u>. We held that a new penalty proceeding was required under the circumstances. We emphasized that this irrelevant testimony was especially troublesome in the penalty phase of a capital case where the crime involved was interracial and the jurors were asked to make the subjective recommendation as to whether the death penalty should be imposed. <u>See</u> <u>id</u>. at 7-8.

The State relies on this Court's decision in <u>Phillips v. State</u>, 476 So.2d 194, 196 (Fla. 1985), <u>receded</u> <u>from</u> <u>on</u> <u>other grounds</u>, <u>Rogers v. State</u>, 511 So.2d 526, 533 (Fla. 1987). In <u>Phillips</u>, the defendant argued that the testimony of a fellow inmate that the defendant used racial slurs when referring to the victim and the victim's family deprived him of a fair trial. 476 So.2d at 196. After first finding that any alleged error had not been preserved for review, we went on to conclude that "[e]ven if preserved for review, this testimony was relevant to discredit appellant's alibi and to explain the context of an incriminating admission; consequently, its admission at trial was not error." <u>Id</u>.; <u>see</u> <u>also</u> <u>Robinson v. State</u>, 574 So.2d 108, 113 (Fla. 1991) (rejecting as "meritless" the black defendant's argument that his statement to police about shooting a "white woman" should have been edited to avoid the risk of racial prejudice).

In this case the jury was informed that Jones used a racial slur when he first gave his version of events to explain the scratches on his face in an attempt to deny his involvement in the murder. The detective did not repeat the racial slur but only indicated that a racial slur was used. Therefore, in this case we do not agree that the comments constituted impermissible appeals to the biases or prejudices of the jurors.

Although we strongly caution prosecutors against eliciting testimony involving racial slurs unless absolutely necessary, we understand that there are limited circumstances where the use of such offensive terms may be directly material to the issues in the case or to the testimony being offered. In this case, although we agree that it was necessary to tell the jury of Jones' initial explanation concerning the source of the scratch marks,

we question whether it was necessary for Detective Parker to mention that a racial slur was used by Jones. In circumstances such as this, we strongly suggest that prosecutors err on the side of caution by omitting these statements and that trial courts consider the danger that the prejudicial effect of such evidence will substantially outweigh any probative value. See § 90.403, Fla. Stat. (1995).

However, in this case, we do not find that there was any attempt to inject race as an issue in the trial, or an impermissible appeal to bias and prejudice. We further note that Jones was a white male charged with murdering a white female. In addition, the actual racial slur was not used before the jury and the comment was not repeated or subsequently highlighted. Based on the foregoing, we find that even if the admission of this reference to Jones using a racial slur was error, it was harmless beyond a reasonable doubt. See DiGuilio, 491 So.2d at 1135.

Defendant also argues in this point on appeal that the prosecutor elicited improperly prejudicial testimony that the defendant had a spider web tattoo on his elbow, allegedly associated with white supremacist gang activity. The only evidence regarding the tattoo during the trial was elicited from the owners and operators of the auto detailing business who were solicited by Jones to detail the interior of McRae's vehicle the day after the murder. These witnesses testified that they noticed Jones' distinctive spider web tattoo at the time they encountered him, and Jones was asked to display this tattoo for the jury.

There was no suggestion ever made to the jury by the State that the spider web tattoo was linked to racism, and it was only referred to before the jury as a distinctive characteristic assisting the witnesses in identifying the defendant. Accordingly, we find no error in the admission of this testimony.

Jones v. State, 748 So.2d at 1022-23.

Upon a thorough review of the record and the applicable law, it is clear that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based

on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

## D. Ground Four

Petitioner alleges that the trial court erred in submitting Petitioner's murder charge to the jury on the theory of premeditation since the evidence was insufficient to establish a premeditated murder. Petition at 87; Petitioner's Memorandum at 15. Petitioner argues that this error deprived him of his rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Petition at 87.

Petitioner raised this issue on direct appeal. See Vol. 10, Tab W at 55. However, Respondent contends, and this Court agrees, that the federal constitutional claims raised in this ground are procedurally barred because they were not raised on direct appeal. See Response at 45-48. "Petitioner concedes this point and cannot argue with Respondent's contention in this regard." Reply at 6.

Even assuming Petitioner exhausted a federal constitutional claim with respect to this issue, he is not entitled to relief. The Florida Supreme Court adjudicated this claim as follows:

> In his fourth point on appeal, Jones alleges that the evidence was insufficient to establish premeditated murder and that the trial court therefore erred in submitting the murder charge to the jury on this theory. We find this point to be without merit.
>
> The grand jury empaneled in this case indicted Jones for first-degree murder on the alternate theories of (1) premeditation and (2) felony murder during the course of a robbery or a kidnapping. The jury was charged on both theories. The jury returned a general verdict of guilty of first-degree murder.

> We have previously held that even if the evidence does not support premeditated murder, any error in charging the jury on that theory is harmless where the evidence supports a conviction for felony murder, which has also been charged. <u>See</u> <u>Mungin v. State</u>, 689 So.2d 1026, 1029-30 (Fla. 1995), <u>cert</u>. <u>denied</u>, 522 U.S. 833, 118 S.Ct. 102, 139 L.Ed.2d 57 (1997). Even assuming that the evidence was not sufficient to support premeditated murder, the evidence is certainly sufficient to support the finding that the defendant committed the murder while engaged in the commission of a robbery and kidnapping. Jones is not entitled to reversal on this point.

<u>Jones v. State</u>, 748 So.2d at 1023-24.

Upon a thorough review of the record and the applicable law, it is clear that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

### E. Ground Five

Petitioner asserts that the trial court erred in excluding as irrelevant the testimony of a defense witness who was to testify during the penalty phase about the impact of crack cocaine addiction based on his own experience as a former addict and as a psychiatrist who treats addicts. Petition at 89-90; Petitioner's Memorandum at 16-20. Petitioner argues that the exclusion of this testimony denied Petitioner of "his rights to due process and a fair presentation of mitigation in the penalty phase of his trial rendering his death sentence unconstitutionally imposed." Petitioner's Memorandum at 20.

Respondent contends that Petitioner presents an issue that is not cognizable on federal habeas review. Response at 54-56. This Court disagrees. <u>See</u> <u>Skipper v. South</u>

Carolina, 476 U.S. 1, 4 (1986) (noting it is well established that a sentencer may not be precluded from considering any relevant mitigating evidence during the penalty phase of a capital case).

Petitioner raised this issue on direct appeal, see Vol. 10, Tab W at 56-60, and the Florida Supreme Court adjudicated the claim as follows:

> In his fifth point on appeal, Jones maintains that the trial court committed reversible error in excluding the testimony of Dr. Harold Eaton, who intended to testify regarding the negative effects of crack cocaine addiction. It is well settled that a trial court has broad discretion concerning the admission of expert testimony, and a trial court's ruling on that issue "will not be disturbed on appeal absent a clear showing of error." Hall v. State, 568 So.2d 882, 884 (Fla. 1990).
>
> According to Jones' counsel's representations to the trial court, he deposed Dr. Eaton and intended to call him at trial, but learned just prior to trial that he was reluctant to testify for job-related reasons - Eaton's supervisors at the hospital where he worked did not want him to testify. Dr. Eaton was not under subpoena because he had voluntarily agreed to testify. Upon first learning that there might be a problem, defense counsel requested that the State agree that Eaton's deposition could be admitted in lieu of his testimony. The State would not agree to the use of the deposition. The trial court itself offered to subpoena the witness, but defense counsel declined and informed the court that he would try to work out the problem of Eaton's availability himself.
>
> Later, during the penalty phase of the trial, defense counsel proposed that the witness testify by telephone and withhold his last name and place of employment to protect his job concerns. Although Dr. Eaton had experience as a medical professional, the defense intended to call him only "because he has experience as a crack addict." As the trial court summarized it, all the witness would testify about was "the fact that he was addicted or once addicted and how it affected him." The trial court ruled that the witness could not testify because "he's not testifying to anything except his personal problems and

27

he's not giving an expert opinion as to how it relates to this defendant."

According to Eaton's deposition, presented as a proffer, he is a psychiatrist, not board certified, who has had specialized training in drug addiction and drug treatment programs. Importantly, however, the vast majority of his testimony related only to his experiences as a drug addict. There were only a few references to the symptoms of crack addicts in general. As he characterized the purpose of his testimony, "I have been asked to testify as a person who has been through the experience of crack cocaine." Eaton admitted that he had not examined the defendant, had never interviewed him, and had not been asked to review materials in order to make a clinical assessment of him.

Defendant maintains that Eaton's testimony should have been admitted as expert testimony, even though he had no personal knowledge of the defendant's circumstances. We agree with Jones' general assertion that a defendant may offer an expert witness to testify to the nature of a particular subject of expertise. See Charles W. Ehrhardt, Florida Evidence § 702.1, at 548 (1999 ed.); see also State v. Hickson, 630 So.2d 172 (Fla. 1993). However, before expert testimony is admitted the trial court must make the following determinations: "First, the subject must be beyond the common understanding of the average layman. Second, the witness must have such knowledge as 'will probably aid the trier of facts in its search for truth.'" Huff v. State, 495 So.2d 145, 148 (Fla. 1986) (quoting Buchman v. Seaboard Coast Line R.R., 381 So.2d 229, 230 (Fla. 1980)).

Jones analogizes this case to Hickson, wherein this Court held that experts on battered-spouse syndrome are permitted to testify to explain the characteristics of battered women, which are beyond the understanding of the average juror, even though the questions are based only on hypothetical facts and are not specifically related to the facts of the defendant's case. 630 So.2d at 176. However, there is an important distinction in this case. In his proffer, Eaton provided little generalized expert testimony regarding the effects of crack cocaine, but instead primarily related his personal experiences with the drug as a drug addict.

28

Unlike the testimony in <u>Hickson</u>, Eaton made no real attempt to testify to the generalized characteristics of crack cocaine addiction. His own personal experiences would not be relevant to any of the penalty phase issues. <u>See Huff</u>, 495 So.2d at 147-48 (finding no abuse of discretion in trial court's exclusion of testimony that "would have been a general critique of proper police practice in processing crime scenes," even though the processing and contamination of the crime scene was an "integral part of appellant's defense").

Moreover, Eaton's testimony was not even expert testimony because the substance of his testimony related to his own personal experiences. <u>See Huff</u>, 495 So.2d at 147-48. Based on all of these factors, we conclude that the trial court did not abuse its broad discretion in refusing to allow this testimony, especially in light of the fact that the defense had suggested that the expert testify via telephone, without even providing his last name or place of employment.

Further, Eaton's testimony would also have been cumulative to other evidence heard by the jury. The jury heard the testimony of Jones' wife regarding the strength of Jones' compulsion for crack and the drastic effect it had on his ability to do anything but endeavor to secure more. In addition, another penalty phase expert witness testified to the addictive effect of cocaine on addicts, their compulsion to attain more crack no matter the cost, and its effect on their ability to control their behavior. Further, there was no assertion that Jones was high on crack at the time of the murder. Finally, the trial court did find as a mitigating circumstance that Jones was a crack addict, that the felony was committed while Jones was under the influence of extreme mental or emotional disturbance, and that Jones' addiction to cocaine substantially impaired his ability to conform his behavior to the requirements of the law. The trial court gave all these mitigators some weight. Thus, even if we were to conclude that this testimony was improperly excluded, the exclusion would be harmless beyond a reasonable doubt. Based on the foregoing, Jones is not entitled to relief on this claim.

<u>Jones v. State</u>, 748 So.2d at 1024-25.

Upon a thorough review of the record and the applicable law, it is clear that the state court's adjudication of this claim was not contrary to clearly established federal law,[14] did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

## F. Ground Six

Petitioner contends that the trial court erred in allowing the state to introduce inflammatory evidence during the penalty phase about the Petitioner's prior murder conviction, thereby impermissibly making the prior murder a feature of the trial. Petition at 92; Petitioner's Memorandum at 21-23. Petitioner raised this issue on direct appeal, see Vol. 10, Tab W at 61-63, and the Florida Supreme Court adjudicated this claim as follows:

> In his sixth point on appeal, Jones argues that he is entitled to a new penalty phase proceeding because the trial court improperly allowed the details of Jones' prior murder of Jasper Highsmith in 1986 to become a feature of the penalty phase proceedings. We disagree.
>
> In this case the State was permitted to present Jones' confession to Highsmith's murder through the testimony of Detective Bradley, a coroner's report indicating that Highsmith's death was caused by trauma to the head and a stab wound to the chest, and photographs of the crime scene, including

---

[14] See Franklin v. Lynaugh, 487 U.S. 164, 185-86 (1988) (noting that nothing in Lockett v. Ohio, 438 U.S. 586 (1978) or Eddings v. Oklahoma, 455 U.S. 104 (1982), "requires that the sentencing authority be permitted to give effect to evidence beyond the extent to which it is relevant to the defendant's character or background or the circumstances of the offense."); Lockett, at 604 n.12 ("Nothing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense."). Here, the trial court's exclusion of this evidence did not affect the fundamental fairness of Petitioner's penalty phase.

photographs of Highsmith's body as it was found. The defendant objected that the introduction of this testimony made the prior murder an impermissible, inflammatory feature of the penalty-phase proceedings.

In Rhodes v. State, 547 So.2d 1201, 1204-05 (Fla. 1989), this Court enunciated the principles governing the admission of prior violent felonies in penalty phase proceedings:

> [I]t is appropriate in the penalty phase of a capital trial to introduce testimony concerning the details of any prior felony conviction involving the use or threat of violence to the person rather than the bare admission of conviction. Testimony concerning the events which resulted in the conviction *assists the jury in evaluating the character of the defendant and the circumstances of the crime* so that the jury can make an informed recommendation as to the appropriate sentence.
>
> . . . .
>
> *. . . [However,] the line must be drawn when that testimony is not relevant, gives rise to a violation of a defendant's confrontation rights, or the prejudicial value outweighs the probative value.*

Id. (citations omitted) (emphasis supplied). In Waterhouse v. State, 596 So.2d 1008, 1016 (Fla. 1992), we found no error in the admission of hearsay testimony from the investigating officer regarding the defendant's prior crime, while in Duncan v. State, 619 So.2d 279, 282 (Fla. 1993), we held that a "gruesome" photograph depicting "gaping wounds to the prior victim's head and face" should not have been admitted because the prejudicial effect of the photograph outweighed its probative value.

As to the recitation by police of Jones' confessions to the Highsmith crime, we have previously held that a police officer may give hearsay testimony concerning a defendant's prior violent felonies. See Hudson v. State, 708 So.2d 256, 261 (Fla. 1998); Clark v. State, 613 So.2d 412, 415 (Fla. 1992); Waterhouse, 596 So.2d at 1016. This is especially true where,

31

as here, the statements recited include the defendant's own confession to the crime. Regarding the admission of the details of the cause of Highsmith's death, including photographs of the body and the coroner's report, we conclude that this evidence was relevant and admissible to "assist[ ] the jury in evaluating the character of the defendant and the circumstances of the crime." Rhodes, 547 So.2d at 1204. In this case the limited evidence of the previous murder was probative. It was not unduly focused upon in the proceeding, or made a feature of the trial. See Hudson, 708 So.2d at 261; Duncan, 619 So.2d at 282; Rhodes, 547 So.2d at 1205. Accordingly, we conclude that Jones is not entitled to reversal on this point.

Jones v. State, 748 So.2d at 1025-26.

Upon a thorough review of the record and the applicable law, the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

## G. Ground Seven

Petitioner contends that the trial court erred in refusing to allow Jones' prior attorney in the previous murder case to testify about the psychiatric report prepared by Dr. Miller in that case, which resulted in Jones' being found incompetent to stand trial, on the ground that the testimony was hearsay. Petition at 94; Petitioner's Memorandum at 24-26. Petitioner raised this issue on direct appeal, see Vol. 10, Tab W at 64-66, and the Florida Supreme Court adjudicated this claim as follows:

As to Jones' seventh point on appeal, we conclude that the trial court did not abuse its discretion in refusing to allow Jones' prior counsel to testify regarding the contents of a competency evaluation performed on Jones in 1986 in a prior

32

proceeding, where a proper predicate had not been laid for the evaluation's admission, and the evaluation required the interpretation of an expert. See Johnson v. State, 660 So.2d 637, 645 (Fla. 1995). Moreover, Jones' competency to proceed in 1986 is irrelevant in light of the fact that he was later declared competent to proceed in that case, and there was no finding that he was incompetent to proceed in this case. Even if the trial court erred, the error would be harmless as to the penalty phase in light of the aggravating circumstances in this case, the testimony in mitigation regarding Jones' drug abuse, the trial court's recognition of the mitigating factor that Jones' capacity to appreciate the criminality of his conduct was impaired, and the fact that the presentence investigation report considered by the trial court before imposing sentence contained similar information. See Downs v. State, 572 So.2d 895, 900 (Fla. 1990).

Jones v. State, 748 So.2d at 1026.

Upon a thorough review of the record and the applicable law, the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

## H. Ground Eight

Petitioner contends that the trial court erred in finding as an aggravating circumstance that the homicide was committed to avoid arrest. Petition at 96-97; Petitioner's Memorandum at 27-29. Petitioner raised this issue on direct appeal, see Vol. 10, tab W at 67-70, and the Florida Supreme Court adjudicated this claim as follows:

In his eighth point on appeal, Jones maintains that the evidence was insufficient to support the finding that the murder was committed to avoid arrest. We have previously held that when the victim is not a law enforcement officer, the evidence

33

must demonstrate "beyond a reasonable doubt that the victim was murdered solely or predominantly for the purpose of witness elimination." Knight v. State, 721 So.2d 287, 298 (Fla. 1998) (quoting Urbin v. State, 714 So.2d 411, 416 (Fla. 1998)). The aggravator can be based on circumstantial evidence. See Preston v. State, 607 So.2d 404, 409 (Fla. 1992); see also, e.g., Urbin, 714 So.2d at 416; Consalvo v. State, 697 So.2d 805, 819 (Fla. 1996), cert. denied, 523 U.S. 1109, 118 S.Ct. 1681, 140 L.Ed.2d 819 (1998).

In regard to the avoid arrest aggravator, the trial court found in its sentencing order:

> This aggravating circumstance requires clear proof that the Defendant's dominate motive was the elimination of a witness. Although it is clear that this aggravator was proven be [sic] circumstantial evidence, the facts are clear that the Defendant selected Lori McRae as victim in order to rob her and obtain money to purchase crack cocaine . . . . However, there was not reason for the Defendant to kill the victim after he had obtained her money to buy crack cocaine. The Defendant had abducted the victim from the parking lot in Duval County and had used the victim's ATM card approximately two hours later in Nassau County, where he extracted $300 from the ATM machine. He could not have used this card any other way than obtaining the PIN number from the victim. Once the money had been obtained from the machine the Defendant had no reason to kill the victim, yet he transported her to Baker County where her body was left in a wooded area . . . . By transporting Lori McRae to the remote location in Baker County where he killed her, the only reasonable inference that the Court can glean from the evidence was that he intended to eliminate her as a witness to [the] crime. The Court finds that this aggravator was proven beyond a reasonable doubt.

We find that competent substantial evidence supports the trial court's findings of fact, and although the evidence could "be

contested," we agree that the circumstantial evidence in this case supports the avoid arrest aggravator. Knight, 721 So.2d at 298. It is well accepted in this Court that the avoid arrest aggravator is proper where "the victim is transported to another location and then killed." See Hall v. State, 614 So.2d 473, 477 (Fla. 1993), and cases cited therein. McRae's body was found in a wooded area of a neighboring county, and the evidence tended to prove that she died as a result of ligature strangulation. As recognized by the trial court, based on the evidence in this case, there was no reason to kill the victim except to prevent detection and arrest. See, e.g., Jennings, 718 So.2d at 151; Willacy v. State, 696 So.2d 693, 696 (Fla.), cert. denied, 522 U.S. 970, 118 S.Ct. 419, 139 L.Ed.2d 321 (1997); Thompson v. State, 648 So.2d 692, 695 (Fla.1994).

Further, any error on this point would be harmless. The other aggravating circumstances found by the trial court, which indisputably apply in this case, were: (1) murder during the commission of a kidnapping and robbery; (2) the commission of a prior violent felony (murder); and (3) the murder in this case was heinous, atrocious, or cruel. In the presence of three strong aggravators, including that Jones had previously been convicted of a prior murder, we are convinced beyond a reasonable doubt that even if the evidence did not support the avoid arrest aggravator, the trial court would have nonetheless imposed the death penalty. See Geralds v. State, 674 So.2d 96, 104-05 (Fla. 1996).

Jones v. State, 748 So.2d at 1027.

Upon a thorough review of the record and the applicable law, it is clear that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

## I. Ground Nine

Petitioner contends that the trial court erred in denying defense counsel's motion to withdraw after a pre-sentence investigation report prepared before the penalty phase portion of the trial commenced revealed a statement Jones gave to the preparer of the report which created a conflict of interest for counsel if he remained on the case.  Petition at 99-101; Petitioner's Memorandum at 30-32.  Petitioner raised this issue on direct appeal, see Vol. 10, Tab W at 71-74, and the Florida Supreme Court adjudicated this claim as follows:

> We reject Jones' argument in his ninth point on appeal that a new penalty phase proceeding is required because the trial court allegedly abused its discretion in denying Jones' counsel's motion to withdraw.  Defense counsel argued at the time that he should be permitted to withdraw because in a presentence investigation report prepared before the penalty phase proceedings Jones stated that he wanted to plead guilty and that it "was not [his] idea to put the family through [the trial]," but his attorney's.  Defense counsel maintained that he could not introduce this report into evidence before the jury because it attacked trial counsel's strategy in the case and that he should be allowed to withdraw so that the report could be introduced.  However, the presentence investigation report Jones' counsel claimed he was prevented from introducing contained a detailed description of Jones' lengthy criminal history, of which the jury was not otherwise aware, including numerous prior convictions for burglary and drug possession.  It is difficult to understand how the presentence investigation report would have further assisted counsel in presenting the mitigating evidence in this case.  Moreover, the report was considered by the trial court in rendering its decision on the imposition of death. Accordingly, we find no abuse of discretion in the trial court's denial of Jones' motion to withdraw.

Jones v. State, 748 So.2d at 1028.

Upon a thorough review of the record and the applicable law, it is clear that the state court's adjudication of this claim was not contrary to clearly established federal law, did not

involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

## J. Ground Ten

Petitioner contends that the trial court erred in permitting the state to introduce victim impact evidence in the penalty phase of the trial because the evidence was inflammatory and the statute permitting victim impact evidence is unconstitutional.   Petition at 102-103; Petitioner's Memorandum at 33.  Petitioner raised this claim as issue ten on direct appeal, see Vol. 10, Tab W at 75-80, and the Florida Supreme Court "decline[d] to reverse the death sentence based on any errors alleged in issue (10), regarding the victim impact evidence[.]" Jones v. State, 748 So.2d at 1028.  The court noted that this argument had been resolved by that court adversely to Petitioner's position in prior cases.  Id. (citing Bonifay v. State, 680 So.2d 413, 419-20 (Fla. 1996) (finding that the victim's wife's testimony regarding the effects of the victim's death upon her was admissible victim-impact evidence pursuant to the holding in Payne v. Tennessee[15] and Section 921.141(7), Florida Statutes) and Windom v. State, 656 So.2d 432, 439 (Fla. 1995) (finding that the procedure for addressing victim impact evidence as set forth in Section 921.141(7), Florida Statutes, did not impermissibly affect the weighing of aggravating and mitigating factors or otherwise interfere with the constitutional rights of the defendant)).

_____

[15] See Payne v. Tennessee, 501 U.S. 808 (1991) (overruling Booth v. Maryland, 482 U.S. 496 (1987), which barred the admission of victim impact evidence during the penalty phase of a capital trial).

Upon a thorough review of the record and the applicable law, it is clear that the state court's adjudication of this claim was not contrary to clearly established federal law,[16] did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

## K. Ground Eleven

Petitioner contends that the trial court erred in reading an unconstitutional jury instruction to define the "heinous, atrocious or cruel" (hereinafter HAC) aggravating circumstance.  Petition at 104-105; Petitioner's Memorandum at 39-44.  The HAC instruction that the trial judge read to the jury is as follows:

> The aggravating circumstances that you may consider are limited to any of the following that are established by the evidence, one, the crime for which the defendant is to be sentenced was especially heinous, atrocious, or cruel.
>
> Heinous means extremely wicked or shockingly evil.
>
> Atrocious means outrageously wicked and vile.

---

[16] See Payne, 501 U.S. at 823, 825, 827 (1991) (finding that where state law permitted its admission, the Eighth Amendment to the United States Constitution does not prevent the prosecution from presenting evidence about the victim, evidence of the impact of the murder on the victim's family, and prosecutorial argument on these subjects; finding no merit to the concern raised in Booth that admission of victim impact evidence "permits a jury to find that defendants whose victims were assets to their communities are more deserving of punishment than those whose victims are perceived to be less worthy.  Such evidence is not generally offered to encourage comparative judgments of this kind, but is designed to show instead each victim's uniqueness as an individual human being[;]" and noting that "the Booth Court was wrong in stating that this kind of evidence leads to the arbitrary imposition of the death penalty.").

> Cruel means designed to inflict a high degree of pain with utter indifference to or even enjoyment of the suffering of others.
>
> The kind of crime intended to be included as heinous, atrocious or cruel is one accompanied by additional acts that show that the crime was consciencelessly or pitiless **or** unnecessarily tortuous to the victim.

Vol. 9 at 2113 (emphasis added).

Petitioner asserts that the trial judge misread the standard jury instruction by stating "consciencelessly or pitiless **or** unnecessarily tortuous to the victim" instead of "consciencelessly or pitiless **and** unnecessarily tortuous to the victim." Petitioner argues that even if the standard instruction had been read, it is unconstitutionally vague.

Petitioner raised this claim as issue eleven on direct appeal, see Vol. 10, Tab W at 81-86, and the Florida Supreme Court declined to reverse the death sentence based on any errors alleged in issue eleven regarding the HAC instruction. Jones v. State, 748 So.2d at 1028. The court noted that this argument had been resolved by that court adversely to Petitioner's position in prior cases. Id. (citing Wike v. State, 698 So.2d 817, 821-22 (Fla. 1997) (finding that the trial court's erroneous instruction that jury could find the HAC aggravator if jury found that the murder was "pitiless or was unnecessarily torturous," rather than "pitiless and was unnecessarily torturous," did not constitute fundamental error where the jury was provided with a written copy of the instructions)[17] and Hall v. State, 614 So.2d 473, 478 (Fla. 1993) (finding that the HAC instruction, which was the same as the written instruction in Petitioner's case, was not unconstitutionally vague)).

_____

[17] In Petitioner's case, a written copy of the instruction, which correctly stated "pitiless **and** unnecessarily tortuous" was provided to the jury. See Vol. 9 at 2118; Vol. 2 at 852.

Upon a thorough review of the record and the applicable law, it is clear that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

### L. Ground Twelve

Petitioner contends that the trial court erred in instructing the jury that an aggravating circumstance could be based on the conviction for the underlying felony for the felony-murder theory of the prosecution and in finding the underlying felony as an aggravating circumstance. Petition at 107-108; Petitioner's Memorandum at 45-48. Petitioner raised this claim as issue twelve on direct appeal, <u>see</u> Vol. 10, Tab W at 87-88, and the Florida Supreme Court declined to reverse the death sentence based on any errors alleged in issue twelve "regarding the 'felony-murder aggravator.'" <u>Jones v. State</u>, 748 So.2d at 1028. The Florida Supreme Court noted that this argument had been resolved by that court adversely to Petitioner's position in prior cases. <u>Id</u>. (citing <u>Blanco v. State</u>, 706 So.2d 7, 11 (Fla. 1997) (finding that the capital felony sentencing statute does not unconstitutionally fail to narrow the class of death-eligible defendants convicted of felony murder because the enumerated felonies in the provision defining felony murder is larger than the list of enumerated felonies in the provision defining the aggravating circumstance of "commission during the course of an enumerated felony")).

Upon a thorough review of the record and the applicable law, it is clear that the state court's adjudication of this claim was not contrary to clearly established federal law, did not

involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Additionally, this Court finds that this claim is without merit. The Eleventh Circuit "has considered this [automatic finding of the felony-murder aggravating factor] argument previously and found it to be meritless. See Johnson v. Dugger, 932 F.2d 1360, 1368-70 (11th Cir.), cert. denied, 502 U.S. 961, 112 S.Ct. 427, 116 L.Ed.2d 446 (1991); Bertolotti v. Dugger, 883 F.2d 1503, 1527-28 (11th Cir. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990)." Mills v. Singletary, 161 F.3d 1273, 1287 (11th Cir. 1998) (per curiam); see also Lowenfield v. Phelps, 484 U.S. 231 (1988) (finding that a death sentence could be imposed for first-degree murder even though the sole aggravating circumstance found by the jury at the sentencing phase, that defendant knowingly created a risk of death or great bodily harm to more than one person, was identical to an element of the capital crime of which defendant was convicted). Accordingly, Petitioner is not entitled to relief on the basis of this claim.

## M. Ground Thirteen

Petitioner contends that the trial court erred in not declaring sections 921.141 and 922.10, Florida Statutes, unconstitutional because the imposition of a death sentence by electrocution is cruel and unusual punishment. Petition at 109; Petitioner's Memorandum at 49-50. Petitioner raised this claim as issue thirteen on direct appeal, and the Florida Supreme Court declined to reverse the death sentence based on any errors alleged in issue thirteen "regarding the constitutionality of the death penalty." Jones v. State, 748 So.2d at

1028. The Florida Supreme Court noted that this argument had been resolved by that court adversely to Petitioner's position in prior cases. Id. (citing Jones v. State, 701 So.2d 76, 80 (Fla. 1997) (holding "that electrocution in Florida's electric chair in its present condition is not cruel or unusual punishment.")).[18]

Upon a thorough review of the record and the applicable law, it is clear that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

### N. Ground Fourteen[19]

In this ground, Petitioner raises numerous ineffective assistance of trial counsel claims. "The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry,

---

[18] Petitioner notes that Florida law has now changed its statutory scheme to allow a prisoner sentenced to death to select lethal injection as the method of execution, see Henyard v. Sec'y, DOC, 543 F.3d 644, 647 (11th Cir. 2008) (per curiam), but does not explain why this does not obviate his claim regarding the electric chair.

[19] Respondents contend, and this Court agrees, that this ground "is a hodgepodge of claims thrown together" and that it is difficult to ascertain the exact nature of each claim raised in this ground. Response at 74 n.11. Furthermore, Petitioner presents these claims in terms of how the state courts erred in denying them. However, the Court will assume Petitioner intends to raise the underlying ineffectiveness claims that were exhausted in state court.

540 U.S. 1, 5 (2003) (per curiam) (citations omitted).  The Eleventh Circuit has captured the

essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>. at 687, 104 S.Ct. at 2064.  Second, the defendant must show that counsel's deficient performance prejudiced him.  <u>Id</u>.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id</u>. at 694, 104 S.Ct. at 2068.

<u>Gaskin v. Sec'y, Dep't of Corr.</u>, 494 F.3d 997, 1002 (11th Cir. 2007) (per curiam).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> The question "is not whether a federal court believes the state court's determination" under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct. 1933.  And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009).  <u>See</u> <u>also</u> <u>Rutherford v. Crosby</u>, 385

F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance

mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state

court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

### 1. Claim One

In his first claim under this ground, Petitioner contends that counsel were ineffective for failing to object, move to strike, or seek a curative instruction regarding potential juror Hyers' response during voir dire that she could not render a fair and impartial verdict. Petition at 111-13. Petitioner raised this claim in his 3.850 motion, see Vol. 11, Tab DD at 113-14, and the trial court found it to be without merit. Vol. 11, Tab GG at 389-90. Petitioner also raised this claim in his appeal of the order denying the 3.850 motion, and the Florida Supreme Court adjudicated the claim as follows:

> In his first claim, Jones argued that his trial attorneys were ineffective for failing to object, move to strike, or seek a curative instruction when prospective juror Hyers stated that she did not think she could put aside what she had read about the case and render a fair and impartial verdict.[20] The trial court, in an effort to insulate the jury from pretrial publicity, conducted individual voir dire with those potential jurors who indicated that they had heard of the case in the media. At that time, Hyers did not indicate that she had any knowledge of the case. Hyers eventually recalled reading about the case but did not reveal what she read or state any opinion about the case in the presence of the other jurors. She simply expressed doubts about whether she could be fair-minded. Further, Hyers did not serve on the jury[21] and those persons who did serve stated that they had not prejudged Jones and could follow the law.

> We have previously rejected a claim that trial counsel was ineffective for failing to move to strike the venire panel when

---

[20] See Vol. 6 at 146-49.

[21] See Vol. 6 at 485.

several potential jurors expressed their feelings about what they had heard about the case. <u>See</u> <u>Johnson v. State</u>, 903 So.2d 888, 896-97 (Fla. 2005). We explained that

> [i]n order for the statement of one venire member to taint the panel, the venire member must mention facts that would not otherwise be presented to the jury. No venire member in Johnson's case mentioned a fact that would not otherwise be presented to the jury. A venire member's expression of an opinion before the entire panel is not normally considered sufficient to taint the remainder of the panel.

> <u>Id</u>. at 897 (citations omitted). As in Johnson, Jones has failed to demonstrate that counsel's failure to object was deficient performance or that he was prejudiced by Hyers' comments. Thus, the trial court correctly denied this claim for relief.

<u>Jones v. State</u>, 949 So.2d at 1028-29.

There are qualifying decisions from both the state circuit and appellate courts. Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

## 2. Claim Two

In his second ineffectiveness claim, Petitioner contends that counsel were ineffective for failing to object to the state's introduction of irrelevant and prejudicial evidence during voir dire and at trial. Petition at 113-15. Petitioner raised this claim in his 3.850 motion, Vol. 11, Tab DD at 114-15, 120, and the trial court found it to be without merit. Vol. 11, Tab BB at

390-93. Petitioner also raised this claim in his appeal of the order denying the 3.850 motion.

The Florida Supreme Court adjudicated the voir dire claim as follows:

> Jones next asserts that the trial court erred in denying his claim that trial counsel were ineffective for failing to object to the prosecutor's statements during jury selection that the victim was the mother of three young children[22]. Specifically, Jones identifies two occasions when the prosecutor asked potential jurors whether this fact would affect their ability to wait until the close of evidence to decide on the appropriate punishment. Our decision in Davis v. State, 698 So.2d 1182 (Fla. 1997), is dispositive. In that case, we held that there was no error in allowing the prosecutor to ask "a prospective juror in front of the others whether it would hinder her impartiality if the case involved a learning disabled child," because this question would "determine if any of the jurors had strong feelings or biases that would prevent them from rendering an impartial verdict in the case." Id. at 1190. Similarly, in this case, the prosecutor's two comments that the victim was the mother of three young children were intended to ensure that the potential jurors understood that they were required to wait until all the evidence was presented before making a decision about the death penalty. Because the prosecutor's comments were not improper, the lack of an objection by trial counsel did not constitute ineffective assistance. See Walls v. State, 926 So.2d 1156, 1169 (Fla. 2006) (agreeing with the trial court that the prosecutor's comments during closing argument were not improper and concluding that therefore counsel was not ineffective for failing to object to them).

Jones v. State, 949 So.2d at 1029 (footnoted omitted).

Additionally, the Florida Supreme Court adjudicated this claim regarding the state's introduction of certain evidence during trial as follows:

> Jones also asserts that trial counsel should have objected when the victim's husband testified that he lived with "kids." We conclude that the trial court correctly found that Jones'

---

[22] See Vol. 6 at 153, 228-29.

> allegations were conclusory and therefore insufficient to warrant relief. See Lott v. State, 931 So.2d 807, 816 (Fla. 2006) ("[W]e have repeatedly held that 'conclusory allegations are insufficient to warrant relief' on an ineffective assistance claim.") (quoting Wright v. State, 857 So.2d 861, 877 (Fla. 2003)). Moreover, trial counsel's failure to object to this isolated ambiguous answer by the victim's husband cannot be deemed an omission that is "outside the broad range of competent performance under prevailing professional standards." Gore, 846 So.2d at 467[23].

Id. at n.9.

Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on the basis of this claim.

### 3. Claim Three

In his third ineffectiveness claim, Petitioner contends that trial counsel were deficient in their representation of Petitioner during the guilt phase of the trial with respect to issues arising from Petitioner's use of psychotropic medication and his mental illness. Petition at 115-22, 129-30. Petitioner raised these issues in his 3.850 motion, Vol. 11, Tab GG at 116-118, and the trial court adjudicated the claims as follows:

> In sub-claim five of Defendant's first claim for relief, he alleges counsel rendered ineffective assistance for failing to present evidence that Defendant was under the influence of powerful medication while in police custody; the effects of those drugs on a mentally ill individual suddenly detoxifying from continuous use of crack cocaine; how this medication impacted on issues including insanity, competency, suppression of

---

[23] Gore v. State, 846 So.2d 461 (Fla. 2003) (per curiam).

statements, ability to form premeditation and mitigation. Defendant argues that counsel failed to protect Defendant's rights regarding the administration of medication. Defendant also argues that counsel failed to challenge Defendant's statements made to the police arguing competency grounds due to this medication and impeach State witnesses on Defendant's statements based on the issue of the medication. Initially, this Court notes that Defendant has failed to present evidence of what medication, including dosage and frequency, he was receiving while in police custody, the effects of this medication on Defendant or the impact it had on issues of insanity, competency, suppression of statements or mitigation. Regarding premeditation, Defendant presented no evidence that he was on or needed to be on the medication he received while in custody. Defendant, further, failed to present evidence that he was not properly medicated while in custody of the police. Accordingly, these allegations are merely conclusory. Conclusory allegations of ineffective assistance of counsel fail to establish entitlement to relief. <u>Parker</u>, *supra*.

Concerning Defendant's allegation that counsel failed to challenge Defendant's statements made to the police arguing competency grounds due to this medication and impeach State witnesses on Defendant's statements, Defendant presented one witness at the evidentiary hearing. John Bowden testified at the evidentiary hearing that he was currently incarcerated for Robbery of a Vehicle, had five to seven felony convictions and had been housed with Defendant in the Duval County Jail in 1995. (Exhibit "A," pages 218-219) Mr. Bowden testified that when he first saw Defendant that Defendant appeared to be "strung out." (Exhibit "A," pages 219-220.[24]) Mr. Bowden's testimony does not address any information regarding the medication Defendant was receiving o[r] the effects it had on Defendant. (Exhibit "A," pages 218-221.) Further, Defendant has failed to refute Detective Parker's trial testimony that when he spoke with Defendant, he did not appear to be under the influence such that his faculties were impaired and that Defendant appeared to be coherent and did not appear to be

---

[24] <u>See</u> Vol. 12, Tab FF at 219-20 (the Court cites the page numbers imprinted on the upper right corner of each page rather than the numbers imprinted on the lower right corner of each page).

under the influence of any drugs or alcohol. (T.T. 1287-1288, 1330, 1334-1335.) Accordingly, Defendant has failed to establish that counsel was ineffective for failing to challenge Defendant's statements to the police based on the effects of the medication he was receiving while in custody and impeach State witnesses on Defendant's statements.

In sub-claim six of Defendant's first claim, he alleges that counsel was ineffective for failing to request the instruction that Defendant was on psychotropic medication at the opening of the trial and for failing to explain to the jury why Defendant was on this medication. Initially, this Court notes that counsel requested that the jury be instructed that Defendant was on psychotropic medication.[25] (R.O.A. Vol. II, pages 338-339). After discussing the requested instruction with the Court, the State and defense counsel agreed to the Court's suggestion that the instruction be given prior to the commencement of testimony. (T.T. 512-514.) However, the instruction that Defendant was taking psychotropic medication was not read until the State had commenced its case-in-chief. (T.T. 646.) Since the record demonstrates that counsel did in fact request that the Court give the jury an instruction regarding Defendant taking psychotropic medication, Defendant has failed to establish error on the part of counsel.

Defendant also alleges counsel was ineffective for failing to ensure that the psychotropic medication instruction was read prior to the commencement of the State's case-in-chief, the Defendant's claim is without merit. Assuming arguendo that counsel's failure to ensure that this instruction was read to the jury prior to the State commencing its case-in-chief was erroneous, Defendant has failed to establish that but for this error, there is a reasonable probability that the outcome of the proceeding would have been different. Mr. Buzzell testified at the evidentiary hearing that the defense had requested the instruction in case Defendant appeared to be drugged. (Exhibit "A," pages 134-135[26].) Mr. Buzzell, further, testified that there was no specific trial strategy regarding Defendant taking

---

[25] See Vol. 1 at 338-39.

[26] See Vol. 12, Tab FF at 134-35.

49

psychotropic medication during the trial and that Defendant was quite polite and conducted himself very well, even when he was agitated. (Exhibit "A," pages 135-136.) Defendant has failed to establish how the late reading of the psychotropic medication instruction to the jury resulted in prejudice to his defense.

Finally, Defendant has failed to allege or present what admissible evidence counsel should have presented at trial to explain why Defendant was on psychotropic medication or how this evidence was relevant to the determination of Defendant's guilt or sentence. Also, Defendant has failed to alleged or present how the defense's psychotropic medication instruction read to the jury inflamed and confused the jury, place[d] Defendant in a negative light and otherwise hurt his case. Accordingly, Defendant's allegations that counsel was ineffective for failing to [present] evidence at trial to explain why Defendant was on psychotropic medication and that counsel's psychotropic medication instruction was prejudicial to the defense are merely conclusory. Conclusory allegations of ineffective assistance of counsel fail to establish entitlement to relief. Parker, *supra.* Defendant's allegations in sub-claim six of claim one are without merit.

In sub-claim seven of Defendant first claim, he alleges that counsel rendered ineffective assistance for failing to properly investigate and challenge his competency to stand trial and for failing to investigate and present evidence of Defendant's mental state at the time of the offense with regards to supporting an insanity defense or establishing that Defendant did not have the ability to form premeditation. The Defendant's first allegation of ineffective assistance concerning counsel's investigation and challenge of Defendant's competency to stand trial. Initially, this Court notes that Dr. Harry Krop was appointed, and subsequently reappointed twice, by the Court as a defense expert to evaluate Defendant's mental health. (R.O.A. Vol. I, 6-7, 31-32; Vol. II, 321-322.) Counsel also sought and received an order directing that Defendant be evaluated on the issue of mental incompetence to proceed. (R.O.A. Vol. I, 15-17, 20-21.) Dr. Wade Myers' and Dr. George Bernard's written reports filed on August 17,1995, and August 21,1995, respectively, found that Defendant was competent to proceed. (R.O.A. Vol. I, 45-53, 58-63.) Further, Mr. Buzzell testified at the evidentiary hearing that he spent hours and hours of time

working with both the defense's confidential psychiatric expert and the court appointed mental health experts. (Exhibit "A," page 129.) Mr. Buzzell testified that he recall[ed] discussing the issue of Defendant taking psychotropic medication with the mental health experts. (Exhibit "A," page 159.) Mr. Buzzell also testified he learned from Dr. Krop that there were both helpful and harmful issues regarding Defendant's mental health that could come out at trial. (Exhibit "A," pages 159-160.) Based on Defendant having been examined by three mental health experts on the issue of competency and Defendant's mental health and counsel's work with these experts, Defendant has failed to establish counsel was deficient for failing to properly investigate and challenge Defendant's competency to stand trial.

Defendant also argues counsel failed to investigate and present evidence of Defendant's mental state at the time of the offense with regards to supporting an insanity defense or establishing that Defendant did not have the ability to form premeditation. Defendant presented Dr. Jonathan Lipman, a neuropharmacologist, to testify at the evidentiary hearing regarding Defendant's use of cocaine and the effects it had on his mental state at the time of the instant offenses. Dr. Lipman testified that Defendant was "constitutionally vulnerable to experiencing the psychosis producing effect of cocaine" that develops only on chronic use. (Exhibit "A," pages 17-18)[27] Dr. Lipman testified that in his opinion Defendant was acting under the influence of chronic cocaine psychosis at the time of the instant offenses. (Exhibit "A," page 21.) Dr. Lipman testified that at the time of the instant offenses, Defendant was disorganized, irrationally fearful and paranoid. (Exhibit "A,") pages 38-39)

On cross-examination by the State, Dr. Lipman testified that his opinion of Defendant's symptomology was based on previous psychological evaluations of Defendant, individuals who saw Defendant and those who testified at Defendant's trial, including Mrs. Jones. (Exhibit "A," pages 43-44.) Dr. Lipman, further, testified that at the time, the mental health experts who evaluated Defendant in 1986, and in 1995, in relation to the instant case, were correct in their own way regarding

---

[27] See Vol. 11, Tab FF at 17-18.

Defendant's mental state, but that in hindsight Defendant has psychosis spectrum disorder. (Exhibit "A," pages 63-64.) Dr. Lipman testified that Defendant understood the criminality of his act but did not want to suffer the consequences. (Exhibit "A," page 69.)

Mr. Buzzell testified at the evidentiary hearing regarding that he discussed with the mental health experts Defendant's need for medication at trial and the impact it might have on issues such as insanity, competency, and suppression of statements. (Exhibit "A," page 159.) Mr. Buzzell testified that testimony regarding this would not have been helpful to the defense. (Exhibit "A," page 160.) Mr. Buzzell testified that he was told by Dr. Krop that if he (Dr. Krop) was called to testify on issues such as competency and insanity, decidedly unhelpful things would come out on cross-examination. (Exhibit "A," page 160.)

The Florida Supreme Court has held "that counsel's reasonable mental health investigation and presentation of evidence is not rendered incompetent 'merely because the defendant has now secured the testimony of a more favorable mental health expert.'" Rivera v. State, 859 So.2d 495, 504 (Fla. 2003) (quoting Asay v. State, 769 So.2d 974, 986 (Fla. 2000). Further, the fact a defendant finds a new expert to give more favorable mental health testimony does not, in itself, render counsel ineffective. Freeman v. State, 858 So.2d 319, 327 (Fla. 2003). At the time of Defendant's trial, counsel had consulted with both the defense expert witness and the two experts appointed for evaluating Defendant's competence. Accordingly, Defendant has failed to establish error on the part of counsel for failing to investigate Defendant's mental state at the time of the instant offenses with regard to premeditation and insanity issues. Regarding the failure to present evidence of the Defendant's mental state during the guilt phase, this Court finds that counsel made a tactical decision not to present evidence of Defendant's mental state during the guilt phase based upon his conversations with the mental health experts, and particularly Dr. Krop. Songer v. State, 419 So.2d 1044 (Fla. 1982); Gonzalez v. State, 579 So.2d 145, 146 (Fla. 3d DCA 1991) ("Tactical decisions of counsel do not constitute ineffective assistance of counsel.") Accordingly, Defendant has failed to establish error on the part of counsel.

Vol. 11, Tab GG at 396-402.

Petitioner also raised these claims in his appeal of the order denying the 3.850 motion, and the Florida Supreme Court adjudicated the claims as follows:

> In his third subissue on appeal, Jones contends that the trial court erred in denying his claims that trial counsel were ineffective for failing to investigate the effects of and request a jury instruction on Jones' use of psychotropic medications before and during trial. In its detailed order, the trial court found that these claims were either conclusory or without merit. We agree. Jones did not present any evidence regarding the details of his pretrial medication or that his need for medication impacted issues such as insanity, competency, suppression of statements, and the ability to form premeditation. Therefore, Jones has failed to prove these allegations of ineffective assistance of counsel. Moreover, trial counsel requested a jury instruction on the administration of psychotropic medication and the trial court agreed to read it to the jury after opening statements. Although the instruction was actually given after the State had presented several witnesses, the trial court related it back to the beginning of trial. Jones has failed to demonstrate that he was prejudiced by this delay. There is no indication in the record that Jones appeared drugged before the jury or acted out in any way. In fact, attorney Buzzell testified at the evidentiary hearing that Jones was polite and conducted himself very well. We affirm the trial court's denial of relief on these claims.
>
> We also affirm the trial court's denial of Jones' claim that trial counsel were ineffective for failing to present evidence during the guilt phase of cocaine addiction and lack of premeditation. In Pietri v. State, 885 So.2d 245, 252-53 (Fla. 2004), we rejected a similar claim that defense counsel was ineffective for failing to present a voluntary intoxication defense based on the defendant's persistent use of cocaine on the days prior to the murder. Although Pietri presented several expert witnesses to support his claim, including Dr. Lipman, the same witness who testified in this case, the Court concluded that Pietri failed to present any evidence "to demonstrate that he was in fact intoxicated at the time of the offense" or "any competent

53

evidence proving his inability to form the specific intent to commit the crime." Pietri, 885 So.2d at 252.

Jones asserts that Pietri is distinguishable because Jones was clearly impaired at the time of the murder. However, Jones presented no evidence at the hearing that the killing occurred while he was intoxicated or under the influence of cocaine. Nor did Jones demonstrate that his history of drug use impaired him to the extent that he could not form the required intent for premeditated murder. In fact, as to Jones' state of mind at the time of the crime, Dr. Lipman testified only that he thought both of the statutory mental health mitigators applied. Thus, Jones failed to present any evidence to support his claim that trial counsel were ineffective in this regard.

Moreover, as the trial court noted, attorney Buzzell testified that he and co-counsel considered presenting evidence of Jones' mental state during the guilt phase but decided against it based on his discussions with Dr. Harry Krop, who was appointed to assist the defense. Attorney Buzzell explained that Dr. Krop indicated that the State would elicit unfavorable information on cross-examination if he were called to testify during the guilt phase. Trial counsel's informed strategic decision not to present this information cannot be considered deficient performance. See Johnson v. State, 769 So.2d 990, 1001 (Fla. 2000) ("Counsel's strategic decisions will not be second-guessed on collateral attack."). Accordingly, the trial court properly denied relief on this claim.

Jones v. State, 949 So.2d at 1029 (footnotes omitted).

Upon a thorough review of the record and the applicable law, it is clear that the state courts' aadjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

## 4. Claim Four

Next, Petitioner contends that counsel were ineffective for failing to seek to exclude evidence and argument on the sexual battery aggravator.  Petition at 122-24.  Petitioner raised this claim in his 3.850 motion, Vol. 11, Tab DD at 120-21, 124-25, and the trial court found it to be without merit.  Vol. 11, Tab GG at 403-10.  Petitioner also raised this claim in his appeal of the order denying the 3.850 motion, and the Florida Supreme Court adjudicated this claim as follows:

> In Jones' fifth ineffective assistance of counsel claim during the guilt phase, he asserted that trial counsel should have objected to the State's presentation of evidence and argument concerning an uncharged sexual battery.  The trial court denied this claim, finding that trial counsel made a tactical decision not to object to the State's introduction of the physical condition of the victim's body, and instead chose to highlight the inconclusive nature of the State's evidence.  The trial court also found that Jones failed to establish that trial counsel were deficient in failing to object to the State's opening statements and closing arguments on this issue because they were fair comments on the evidence.  We find no error in the trial court's findings and conclusions.

> Jones provides no support for his contention that the State's presentation of evidence of the physical condition of McRae's body was objectionable.  Evidence of the condition of the victim's body as found by the police was clearly relevant.  Cf. Marquard v. State, 850 So.2d 417, 427 (Fla. 2002) (concluding that trial counsel was not ineffective for failing to object to the introduction of the victim's bones and to a video depicting the victim's bones and personal possessions that were scattered throughout the crime scene because the evidence was relevant to the manner in which the victim was murdered); Looney v. State, 803 So.2d 656, 669-70 & n.9 (Fla. 2001) (explaining that crime scene photographs are relevant when they establish the manner in which the murder was committed, show the position and location of the victim as found by police, or assist crime scene technicians in describing the crime scene).

Further, Buzzell testified that defense counsel were aware that the State believed that the evidence supported the inference of a sexual assault and that the defense strategy was to expose the weaknesses in the State's theory. On cross-examination of serologist Diane Hanson, defense counsel elicited testimony that a presumptive test for the presence of semen on an area of Jones' jeans came back negative. Defense counsel also elicited testimony from the medical examiner that the condition of the victim's clothes suggested that she had been dragged to the area where she was found, and testimony from McRae's husband that at times McRae did not wear underwear with her jeans. Counsel's strategic decision to rebut the State's suggestion of a possible sexual assault on cross-examination, rather than object to the evidence, cannot be considered unreasonable under the circumstances of this case. See Occhicone, 768 So.2d at 1048 ("[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.").

In addition, Jones does not identify specifically which comments in the prosecutor's opening statements and closing arguments were objectionable. We assume Jones is referring to the prosecutor's opening statements regarding the condition of McRae's body and the closing argument that McRae's shoes may have been off because Jones wanted her pants off. However, these comments were not improper. By referring to the way in which McRae's body was found, the prosecutor was merely outlining "what he in good faith expected to be established by the evidence presented at trial," which is the purpose of opening statement. Perez v. State, 919 So.2d 347, 363 (Fla. 2005), cert. denied, 547 U.S. 1182, 126 S.Ct. 2359, 165 L.Ed.2d 285 (2006). In closing argument, the prosecutor appropriately pointed to an inference that "may reasonably be drawn from the evidence." Griffin v. State, 866 So.2d 1, 16 (Fla. 2003) (quoting Bertolotti v. State, 476 So.2d 130, 134 (Fla. 1985)). Moreover, the prosecutor did not tell the jury that McRae had been sexually assaulted. Accordingly, trial counsel's failure to object was not deficient performance and the trial court did not err in denying this claim for relief.

Jones v. State, 949 So.2d at 1031-32.

Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

## 5. Claim Five

Petitioner contends that counsel were ineffective for failing to object to the state's assertion during opening statement that the murder was especially heinous, atrocious and cruel. Petition at 124-25. Petitioner raised this claim in his 3.850 motion, Vol. 11, Tab DD at 119, and the trial court found it to be without merit. Vol. 11, Tab GG at 410-11. Petitioner also raised this claim in his appeal of the order denying the 3.850 motion, and the Florida Supreme Court adjudicated this claim as follows:

> Jones next contends that the trial court erred in denying his claim that trial counsel were ineffective for failing to object to the prosecutor's remark during opening statements that McRae's murder was heinous, atrocious, and cruel. Jones asserts that counsel's failure to object to the State's reference to this penalty-phase aggravator in the guilt phase undermines the outcome of both the guilt and penalty phases. Specifically, the prosecutor stated:
>
>> We do not know exactly how long he kept her alive, and we don't know exactly what he did to her but we do know enough to know everything that's important to know for the purpose of proving that he's guilty of first degree murder, and not just first degree murder *but horrible, heinous, atrocious and cruel* first degree murder.
>
> (Emphasis supplied.) We do not decide the issue of deficient performance because Jones has failed to establish prejudice.

57

> Given the strong evidence of Jones' guilt, including his confession to the murder and his possession of McRae's vehicle and ATM card, our confidence in the guilty verdict is not undermined by the prosecutor's comment describing the nature of the murder. Cf. Walls, 926 So.2d at 1167 (concluding that the defendant failed to establish that he was prejudiced by counsel's failure to object to one improper prosecutorial comment where the comment was not so prejudicial as to require a new trial). Our confidence in the death sentence is not undermined because as we noted on direct appeal, the HAC aggravator, which was found by the trial court, "indisputably appl[ies] in this case." Jones, 748 So.2d at 1027.

Jones v. State, 949 So.2d at 1032.

Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

### 6. Claim Six

Petitioner contends that counsel were ineffective for failing to keep from the jury evidence of Petitioner's alleged racism. Petition at 112, 125. Petitioner raised this claim in his 3.850 motion, Vol. 11, Tab DD at 119, and the trial court found Petitioner could not "establish that there is a reasonable probability that the outcome of the proceeding would have been different had counsel objected to the State's 'not-so-veiled' reference to a racial slur attributed to Defendant." Vol. 11, Tab BB at 412. Petitioner also raised this claim in his appeal of the order denying the 3.850 motion, and the Florida Supreme Court adjudicated this claim as follows:

Next, Jones asserts that the trial court erred in denying his claim that trial counsel were ineffective for failing to object to the prosecutor's reference during opening statements to a racial slur Jones used to describe two African-American males. We previously dealt with this as an evidentiary issue on direct appeal. We determined that any error in allowing Detective Parker to refer to the fact that Jones used a racial slur was harmless beyond a reasonable doubt. See Jones, 748 So.2d at 1023. In reaching this conclusion, we found that there was no "attempt to inject race as an issue in the trial, or an impermissible appeal to bias and prejudice." Id. We also rejected Jones' argument that the prosecutor elicited improper testimony that Jones had a spider web tattoo, noting that "[t]here was no suggestion ever made to the jury by the State that the spider web tattoo was linked to racism." Id. Jones' allegation of ineffective assistance of counsel is merely a variant of the issues raised on direct appeal and is therefore procedurally barred. See Torres-Arboleda v. Dugger, 636 So.2d 1321, 1323 (Fla. 1994) ("Proceedings under rule 3.850 are not to be used as a second appeal; nor is it appropriate to use a different argument to relitigate the same issue.").

Jones v. State, 949 So.2d at 1032.

Respondents claim that this ineffectiveness issue is procedurally barred because the Florida Supreme Court found it to be so. Response at 102. This Court disagrees because the ineffectiveness claim is different than the underlying claim that the prosecutor improperly attacked Petitioner's character at trial by eliciting evidence which suggested that Petitioner might harbor racial prejudices against African-Americans.

However, this Court finds that the trial court's adjudication of this ineffectiveness claim on the merits is not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

## 7. Claim Seven

Petitioner contends that counsel were ineffective for failing to adequately impeach witness Amy Hudson. Petition at 126. Petitioner raised this claim in his 3.850 motion, Vol. 11, Tab DD at 121-22, and the trial court found the claim to be without merit. Vol. 11, Tab GG at 412-13. Petitioner also raised this claim in his appeal of the order denying the 3.850 motion. The Florida Supreme Court adjudicated this claim as follows:

> Jones also contends that the trial court erred in denying his claims that trial counsel were ineffective for failing to impeach State witnesses Amy Hudson, a bartender who observed Jones on the night of the murder, and Jackie Doll Jones, Jones' wife. Regarding Hudson, the trial court considered the evidence presented and concluded that the
>
>> [d]efendant has failed to establish error on the part of counsel for failing to impeach Ms. Hudson with her deposition testimony or challenge her opinion that the man she saw was a crack addict. Further, assuming arguendo, that counsel's performance was deficient, Defendant has failed to establish prejudice to his case from Ms. Hudson's opinion that the man she saw was a crack addict since Mr. Buzzell testified at the evidentiary hearing that he believed the defense had presented an abundance of evidence to establish that Defendant was a crack addict. Accordingly, Defendant [sic] allegations are without merit.
>
> (Citations omitted.) We affirm the trial court's denial of relief on this claim.

Jones v. State, 949 So.2d at 1033.

Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based

60

on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

## 8. Claim Eight

Petitioner contends that counsel were ineffective for failing to adequately investigate and impeach witness Jackie Doll Jones. Petition at 127-28. Petitioner raised this claim in his 3.850 motion, Vol. 11, Tab DD at 122, and the trial court found the claim to be without merit. Vol. 11, Tab GG at 414. Petitioner also raised this claim in his appeal of the order denying the 3.850 motion. The Florida Supreme Court adjudicated this claim as follows:

> As to Jackie, Jones alleged that trial counsel failed to investigate sufficiently to discover that Jackie had an outstanding warrant in Texas, and failed to present evidence of the full scope of her deal with the State to testify. We agree with the trial court that Jones failed to establish deficient performance. At the evidentiary hearing, Jackie testified that at the time of the trial, neither she nor the State were aware of the charges in Texas. She also stated that she did not have a deal with the State in exchange for her testimony at Jones' trial. Attorney Buzzell testified that he did not recall Jackie saying anything about a crime in Texas. Jones did not present evidence that anyone involved in Jones' trial, including the State or Jackie, knew of the outstanding warrant in Texas or that Jackie had any deals with the State. Accordingly, the trial court correctly denied this claim for relief.

Jones v. State, 949 So.2d at 1032.

Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

## 9. Claim Nine

Petitioner contends that counsel were ineffective for failing to accept the state's offer of a curative instruction when Detective Parker commented on Petitioner's right to remain silent.  Petition at 128.  Petitioner raised this claim in his 3.850 motion, Vol. 11, Tab DD at 124, and the trial court adjudicated the claim as follows:

> In sub-claim fourteen of Defendant's first claim, he alleges that counsel was ineffective for rejecting the State's offer for the Court to issue a curative instruction after Detective Parker testified that Defendant exercised his rights under the Fifth Amendment.  Defendant's claim is without merit. The Florida Supreme Court addressed the underlying issue of Detective Parker testifying regarding Defendant's exercising of his rights under the Fifth Amendment on Defendant's direct appeal.  The Court agreed with the State that this testimony was an improper comment on Defendant's right to remain silent, but also held that the error was harmless. Jones v. State, 748 So. 2d 1012, 1021 (Fla. 1999).  The Court held that based on the evidence presented at trial and that Defendant's exercising of his Fifth Amendment rights was not repeated or emphasized, it was "convinced 'beyond a reasonable doubt that the error complained of did not contribute to the verdict.'" Id. at 1022 (citing State v. DiGuilio, 491 So.2d 1129, 1935 (Fla. 1986)[).] In light of the Florida Supreme Court's determination that Detective Parker's testimony that Defendant invoked his right to remain silent was harmless, Defendant cannot establish that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's failure to accept the State's offer for the Court to issue a curative instruction to the jury. Strickland.

Vol. 11, Tab GG at 414-15.  Petitioner also raised this claim in his appeal of the order denying the 3.850 motion, see Vol. 12, Tab HH at 64, and the Florida Supreme Court affirmed the trial court's order, without discussing this issue.

Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on the basis of this claim.

### 10. Claim Ten

Petitioner contends that counsel were ineffective for failing to object to the prosecutor's inflammatory statements during closing argument. Petition at 128-29. Petitioner raised this claim in his 3.850 motion, Vol. 11, Tab DD at 125, and the trial court found the claim to be without merit. Vol. 11, Tab GG at 415-17. Petitioner also raised this claim in his appeal of the order denying the 3.850 motion. See Vol. 12, Tab HH at 65-66. The Florida Supreme Court adjudicated this claim as follows:

> We also reject Jones' claim that trial counsel were ineffective for failing to object to the State's guilt-phase closing arguments. Jones has failed to provide any support for his contention that the arguments he refers to in his brief were objectionable. Further, after reviewing the comments, we conclude that even if they were improper, Jones was not prejudiced by counsel's failure to object. As with the prosecutor's comment during opening statements that the murder was heinous, atrocious and cruel, none of the alleged improper comments during the prosecutor's closing argument undermine our confidence in the jury's guilty verdict.

Jones v. State, 949 So.2d at 1032.

Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based

on an unreasonable determination of the facts in light of the evidence presented in the state

court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

## 11. Claim Eleven

Petitioner contends that counsel were ineffective for failing to present mental health

evidence during the penalty phase.  Petition at 130-44.  Petitioner raised this claim in his

3.850 motion, Vol. 11, Tab DD at 132-33, and the trial court found the claim to be without

merit.  Vol. 11, Tab GG at 418-20.  Petitioner also raised this claim in his appeal of the order

denying the 3.850 motion, and the Florida Supreme Court adjudicated this claim as follows:

> Jones next asserts that the trial court erred in denying his claim that trial counsel were ineffective for failing to investigate and present mental health mitigation.  To support his claim, Jones presented Dr. Lipman, who testified that Jones is someone who is "constitutionally vulnerable to experiencing the psychosis producing effect of cocaine and other stimulants."  Dr. Lipman explained that when first used, crack cocaine produces euphoria and a sensation of competence and energy, reduces sleep, suppresses the appetite, and can also cause irritability and anxiety.  When crack is used for an extended period, the negative side effects become more pronounced and the sensation of irritability and anxiety become full-blown paranoia and psychosis.  A person in this condition typically suffers from hallucinations and delusions, and has very poor contact with reality.  Dr. Lipman explained that in Jones' case, the cocaine brought out an underlying schizophrenic condition.  Dr. Lipman further opined that because of Jones' extensive use of crack cocaine, Jones was acting under the influence of chronic cocaine psychosis at the time the murder was committed.  Dr. Lipman concluded that Jones' capacity to appreciate the criminality of his conduct was substantially impaired and that the murder was committed while Jones was under the influence of extreme mental or emotional disturbance.
>
> On cross-examination, Dr. Lipman clarified that his opinions were based on his independent review of Jones' symptomatology as well as Jones' self-reports.  Although Dr.

Lipman was aware that some of the records he reviewed were produced for trial, he was not sure what was actually used at trial. Dr. Lipman did not discuss whether defense counsel had a strategy in choosing not to use certain materials at trial. Dr. Lipman recalled that one of the mental health experts who examined Jones prior to trial noted that another inmate had reported that Jones stated that if he said he used drugs, he would not get the death penalty. Dr. Lipman testified that he would have told the penalty-phase jury that Jones suffers from an underlying psychotic vulnerability and he would have linked this to a previous murder committed by Jones and the crimes committed in this case. Dr. Lipman believed that although Jones knew what he was doing at the time of the murder, i.e., Jones was not insane, Jones' conduct was the product of a deranged mind.

This Court has recognized that "the obligation to investigate and prepare for the penalty portion of a capital case cannot be overstated." State v. Lewis, 838 So.2d 1102, 1113 (Fla. 2002). "[A]n attorney has a strict duty to conduct a reasonable investigation of a defendant's background for possible mitigating evidence." Ragsdale v. State, 798 So.2d 713, 716 (Fla. 2001) (quoting State v. Riechmann, 777 So.2d 342, 350 (Fla. 2000)) (alteration in original); see also Wiggins v. Smith, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). However, when presenting claims that counsel was ineffective for failing to present mitigating evidence, the defendant has the burden of showing that any deficiency in counsel's performance "deprived the defendant of a reliable penalty phase proceeding." Rutherford v. State, 727 So.2d 216, 223 (Fla. 1998).

This is not a case in which trial counsel failed to conduct any meaningful investigation into mitigation. Defense attorneys Buzzell and Chipperfield both recounted their investigation into mental health mitigation. Indeed, Buzzell stated that the defense team spent substantial time on this issue. Additionally, the trial record establishes that Jones' mental health and serious cocaine addiction were major themes in this case. As this Court noted on direct appeal, counsel presented the testimony of two experts during the penalty phase:

Defense counsel also called Drew Edwards to testify as an expert in the penalty-phase proceedings. Edwards offered his testimony as an expert regarding the effect of cocaine on the brain. Edwards testified that Jones was a crack addict, suffering from these symptoms. Edwards made clear that he did not believe addiction to cocaine is an excuse for crime, yet he admitted that a cocaine addict would suffer impairment of his ability to conform his conduct to the requirements of the law. Edwards testified that despite his addiction, Jones would have always known the difference between right and wrong.

Another defense expert testified that Jones has an I.Q. of 78, placing him between the fifth and ninth percentiles of the population. The expert testified that standardized tests revealed that Jones had little ability to control his impulses, but admitted that his motivation to get the right answer during his testing appeared to "vary." She opined that he was able to conform his conduct to the requirements of the law, "provided he's not impaired in some other way."

Jones, 748 So.2d at 1017.

Although Jones acknowledges that trial counsel did pursue mental health mitigation, he argues that trial counsel did not adequately investigate, prepare, and present evidence on this issue. We disagree. This is not a case where a mental health defense was considered and then summarily rejected. Rather, mental health mitigation was vigorously pursued, the jury was instructed on statutory mitigation, and the trial court found mitigation:

[T]he trial court did find as a mitigating circumstance that Jones was a crack addict, that the felony was committed while Jones was under the influence of extreme mental or emotional disturbance, and that Jones' addiction to cocaine substantially impaired his ability to conform his

66

> behavior to the requirements of the law. The trial
> court gave all these mitigators some weight.

> Id. at 1025. Accordingly, trial counsel's performance regarding
> the presentation of mitigation was not deficient and we affirm the
> trial court's denial of this claim for relief.

Jones v. State, 949 So.2d at 1034-35.

Upon a thorough review of the record and the applicable law, it is clear that the state

courts' adjudications of this claim were not contrary to clearly established federal law, did not

involve an unreasonable application of clearly established federal law, and were not based

on an unreasonable determination of the facts in light of the evidence presented in the state

court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

## 12. Claim Twelve

Petitioner contends that counsel were ineffective for failing to object to the

prosecutor's inflammatory comments in his opening statement at the penalty phase. Petition

at 144-45. Petitioner raised this claim in his 3.850 motion, Vol. 11, Tab DD at 134, and the

trial court found the claim to be without merit. Vol. 11, Tab GG at 420-21. Petitioner also

raised this claim in his appeal of the order denying the 3.850 motion. The Florida Supreme

Court adjudicated this claim as follows:

> We first address Jones' claim that counsel were
> ineffective for failing to object to a portion of the prosecutor's
> opening statement that Jones asserts characterized his crack
> cocaine use as an "excuse." Once again, Jones has failed to
> establish either deficiency in failing to object or prejudice. The
> prosecutor did not use the word "excuse" and her comments
> were based on the evidence she believed the defense would
> present and her belief that this evidence did not sufficiently
> mitigate the murder to warrant a life sentence. Cf. Perez, 919
> So.2d at 363 (stating that the purpose of opening statements is

"for counsel to outline what he [or she] in good faith expected to be established by the evidence presented at trial"). In fact, the defense did present extensive evidence of Jones' history of drug abuse and the effect this drug abuse had on Jones' behavior. Accordingly, the trial court did not err in denying this claim for relief.

Jones v. State, 949 So.2d at 1034.

Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

### 13. Claim Thirteen

Petitioner contends that counsel were ineffective for failing to present mitigating evidence through lay witnesses during the penalty phase. Petition at 145-51. Petitioner raised this claim in his 3.850 motion, Vol. 11, Tab DD at 134-35, and the trial court found the claim to be without merit. Vol. 11, Tab GG at 423-24. Petitioner also raised this claim in his appeal of the order denying the 3.850 motion. The Florida Supreme Court adjudicated this claim as follows:

In his last issue on appeal, Jones asserts that the trial court erred in denying his claim that trial counsel were ineffective during the penalty phase for failing to investigate and present lay witness mitigation testimony. At trial, the defense presented the testimony of several lay witnesses to establish mitigation. Jones' wife, Jackie, testified about the severity of Jones' drug use during the months prior to the murder. She stated that when Jones was not using drugs he was hardworking, courteous, affectionate, and kind. Jones' sister, Cynthia Bryant, testified that she and Jones have a close relationship and that Jones is

a different person when he is using drugs. Jones' mother, Joann Sealy, gave detailed testimony about Jones' childhood and her knowledge of Jones' past criminal history and use of drugs. Last, Wayne Pierce, who employed Jones for a period of three to four months in 1993 or 1994, testified that Jones did his assigned jobs well, did not need constant supervision, and was not a violent person.

At the evidentiary hearing, Jones presented three lay witnesses to support this claim of ineffective assistance, one of which was his mother, whose testimony was consistent with her testimony at trial. Jones' current claim that his brother Carlos should have testified regarding instances of abusive behavior by their father and that another witness, Jeffrey Morrow, should have testified about Jones' drug use in the mid-eighties, does not establish any deficiency or prejudice. This lay testimony would, at best, have been cumulative to what was presented at trial. Counsel's performance "cannot be deemed deficient for failing to present cumulative evidence." Holland, 916 So.2d at 757. Moreover, Carlos admitted that Jones was much younger than he was and, therefore, probably did not experience as much of their father's violence. Morrow was incarcerated for grand theft at the time of the hearing and had no personal knowledge of McRae's murder or what Jones was doing in the days leading to the murder. In sum, Jones failed to present any additional compelling lay witness mitigation testimony to support his ineffective assistance of counsel claim. The trial court properly found that Jones failed to establish that trial counsel's failure to present this evidence was deficient performance. Thus, the trial court did not err in rejecting this claim.

Jones v. State, 949 So.2d at 1035-36.

Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

## O. Ground Fifteen

In his final ground, Petitioner raises three ineffective assistance of appellate counsel claims. "A [petitioner] can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." Shere v. Sec'y, Dep't of Corr., 537 F.3d 1304, 1310 (11th Cir. 2008) (citations omitted).

> The Supreme Court has held a criminal defendant's appellate counsel is not required to raise all nonfrivolous issues on appeal. Jones v. Barnes, 463 U.S. 745, 751-54, 103 S.Ct. 3308, 3312-14, 77 L.Ed.2d 987 (1983). In so holding, the Court noted, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Id. at 751-52, 103 S.Ct. at 3313. Therefore, it is difficult for a defendant to show his counsel was ineffective for failing to raise certain issues on appeal, particularly if counsel did present other strong issues. Smith v. Robbins, 528 U.S. 259, 287-88, 120 S.Ct. 746, 765-66, 145 L.Ed.2d 756 (2000).

Payne v. United States, 566 F.3d 1276, 1277 (11th Cir. 2009) (per curiam).

In his first claim, Petitioner asserts that appellate counsel was ineffective for failing to argue that the prosecutor improperly presented evidence and argument on an uncharged sexual battery. Petition at 153-63. Petitioner raised this issue in his state habeas petition, and the Florida Supreme Court adjudicated the claim as follows:

> In his first claim, Jones asserts that appellate counsel was ineffective for failing to argue on direct appeal that the State improperly presented evidence and argument on sexual battery. As the State correctly observes, Jones does not identify the legal basis upon which appellate counsel should have presented this issue on direct appeal. Instead, Jones refers to both allegedly preserved and unpreserved errors from the

70

prosecutor's guilt-phase opening statement, guilt- and penalty-phase closing arguments, and testimony adduced at trial. He contends that together this argument and testimony constituted the presentation of evidence of an uncharged sexual battery.

The unpreserved errors that Jones asserts appellate counsel should have raised on direct appeal are: (1) the prosecutor's references during guilt-phase opening statements to the condition in which McRae's body was found; (2) the medical examiner's testimony regarding the condition in which McRae's body was found; (3) the prosecutor's question to serologist Diane Hudson regarding a hypothetical rape case and a mixed DNA stain; (4) Officer Grant's testimony that when he arrested Jones, Jones had "rape marks from fingernails" on his face; (5) comments by the prosecutor during guilt-phase closing arguments that McRae's shoes were off and pants were down; and (6) comments by the prosecutor during penalty-phase closing argument that "we have to deter people from robbing and raping and kidnapping people," and that Jones decided to take McRae "out in the middle of nowhere and do God knows what with her later." Generally, "appellate counsel cannot be ineffective for failing to raise issues not preserved for appeal. The only exception to this rule is when the claim involves fundamental error." Archer v. State, 934 So.2d 1187, 1205 (Fla. 2006) (citations omitted). Fundamental error is error that reaches "down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Kilgore v. State, 688 So.2d 895, 898 (Fla. 1996) (quoting State v. Delva, 575 So.2d 643, 644-45 (Fla. 1991)). Error during the penalty phase is fundamental if it is "so prejudicial as to taint the jury's recommended sentence." Fennie v. State, 855 So.2d 597, 609 (Fla. 2003) (quoting Thomas v. State, 748 So.2d 970, 985 n.10 (Fla. 1999)). We conclude that even if improper, the testimony and comments set forth above, either individually or cumulatively, do not rise to the level of fundamental error.

As to the prosecutor's remarks during guilt- and penalty-phase closing arguments about the condition of McRae's clothes that were objected to by defense counsel, this Court has explained:

> With regard to evidentiary objections which trial counsel made during the trial and which appellate counsel did not raise on direct appeal, this Court evaluates the prejudice or second prong of the Strickland test first. In doing so, we begin our review of the prejudice prong by examining the specific objection made by trial counsel for harmful error. A successful petition must demonstrate that the erroneous ruling prejudiced the petitioner.
>
> Jones v. Moore, 794 So.2d 579, 583 (Fla. 2001). We conclude that the closing arguments referred to in Jones' petition, if error, were harmless beyond a reasonable doubt.
>
> In sum, Jones' assertion that the errors would have entitled him to relief if raised on direct appeal is without merit. We therefore deny this claim for relief.

Jones v. State, 949 So.2d at 1036-37.

Upon a thorough review of the record and the applicable law, it is clear that the Florida Supreme Court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Next, Petitioner asserts that appellate counsel was ineffective for failing to argue on direct appeal that the prosecutor presented irrelevant and inappropriate evidence and argument regarding the presence of a knife and alleged stab wounds to the victim. Petition at 164-69. Petitioner raised this issue in his state habeas petition, and the Florida Supreme Court adjudicated the claim as follows:

In his next habeas claim, Jones asserts that appellate counsel was ineffective for failing to argue on direct appeal that the State improperly presented evidence and argument regarding a knife and unsubstantiated stab wounds. As with his previous claim, Jones does not identify the legal basis upon which appellate counsel should have presented this issue on direct appeal. Instead he refers to both allegedly preserved and unpreserved errors from the prosecutor's guilt-phase opening and closing statements and testimony adduced at trial, and argues that together this constituted reversible error that should have been raised on direct appeal. We address the preserved and unpreserved alleged errors separately below.

(1) Unpreserved errors

The unpreserved errors that Jones contends appellate counsel should have raised on direct appeal are: (1) the prosecutor's comment during opening statements that there was a knife in McRae's car "that belongs to [Jones] or if it doesn't belong to him it certainly doesn't belong to Lori McRae or her husband"; (2) the medical examiner's testimony that due to the lack of blood on McRae's brassiere he could rule out severe injury to McRae's chest but could not rule out that her throat had been cut, and then his testimony that he could not determine whether a hole in the upper torso of McRae's chest was caused by "decomposition" or "instrumentation"; and (3) the prosecutor's comment during closing arguments that it looked like one of McRae's shoelaces had been ripped or cut and rhetorical question about whether this had anything to do with the knife found in the car. We conclude that neither the prosecutor's comments nor the medical examiner's testimony were objectionable, much less fundamental error.

(2) Preserved errors

Florida Department of Law Enforcement Officer Allen Miller testified regarding the items that were processed from McRae's vehicle. When he was asked by the State why he returned to the vehicle to process evidence from the front console that had been photographed during the original search, Miller responded:

73

> Well, at the time of the original processing it was noted the items that were in the console, a pack of playing cards, some cigarettes, cassette tapes, cologne and a small paring knife was in there. *And after the postmortem examination it was revealed that the victim had received some stab wounds.*

(Emphasis supplied.) Trial counsel objected and moved for a mistrial. The trial court denied the motion and gave the following curative instruction:

> Ladies and gentlemen of the jury, let me give you a correct statement here. The last statement that the witness gave in response to a question from [the prosecutor] was involving some stab wounds on the victim. There is-that was a misstatement by Mr. Miller, the witness, there has been no evidence of any stab wounds on the victim nor will there be any concerning stab wounds on the victim, so you're to disregard that, that's absolutely a misstatement on Mr. Miller's part, okay.

This Court has explained that "[a] motion for mistrial is properly denied where the matter on which the motion is based is rendered harmless by a curative instruction." <u>Perez</u>, 919 So.2d at 364. Although Miller misspoke when he stated that the postmortem examination revealed stab wounds, the trial court quickly corrected this error by informing the jury that there had not been and would not be any evidence presented that the victim was stabbed. Thus, Miller's misstatement was rendered harmless.

Trial counsel also objected to the introduction of the paring knife into evidence, arguing that the knife was not relevant. The trial court overruled the objection, finding that the knife was relevant as evidence found in the car and processed by police. We conclude that the trial court did not abuse its discretion in admitting the knife into evidence. The knife was found in the victim's car and was relevant to the police investigation at one of the crime scenes.

> Because both the preserved and unpreserved errors
> regarding the paring knife and stab wounds are without merit,
> appellate counsel was not ineffective for failing to raise them on
> direct appeal.  We therefore deny this claim for relief.

Jones v. State, 949 So.2d at 1037-39.

Upon a thorough review of the record and the applicable law, it is clear that the Florida

Supreme Court's adjudication of this claim was not contrary to clearly established federal

law, did not involve an unreasonable application of clearly established federal law, and was

not based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this

claim.

In his final claim, Petitioner asserts that appellate counsel was ineffective for failing

to argue on direct appeal that Detective Parker improperly commented on Petitioner's

credibility.  Petition at 169-75.  Petitioner raised this issue in his state habeas petition, and

the Florida Supreme Court adjudicated the claim as follows:

> In his final habeas claim, Jones asserts that appellate
> counsel was ineffective for failing to argue on direct appeal that
> Detective Parker improperly commented on Jones' credibility.
> During his testimony, Parker was asked to relate the substance
> of his interviews with Jones.  Parker noted several times that
> there were discrepancies in Jones' statements.  Parker also
> recounted his specific responses to Jones during these
> interviews, in which he expressed doubt about Jones' honesty.
>
> We conclude that Parker's testimony relating to the
> substance of his interviews with Jones was not a prohibited
> comment on Jones' credibility.  This Court has explained that
> "allowing one witness to offer a personal view on the credibility
> of a fellow witness is an invasion of the province of the jury to
> determine a witness's credibility." Knowles v. State, 632 So.2d
> 62, 65-66 (Fla. 1993) (emphasis supplied).  Relying in part on

this principle, the Court in <u>Knowles</u> held that for a number of reasons, it was improper for the State to ask the defendant whether he thought the State's witnesses were lying. <u>See id</u>. at 65. In <u>Page v. State</u>, 733 So.2d 1079, 1081 (Fla. 4th DCA 1999), which is cited by Jones in his petition, the court ruled that it was harmful error to fail to strike a police officer's testimony as to his opinion on the credibility of a confidential informant who also testified at trial. In this case, Detective Parker was testifying as to the circumstances that led to Jones' confession to murder. Although Parker's testimony indicated that he doubted the veracity of Jones' statements at the time of the interviews, Parker did not comment on the credibility of any witness that testified at trial. Thus, even if Jones had raised this issue on appeal, he would not have prevailed. We deny habeas relief on this claim.

<u>Jones v. State</u>, 949 So.2d at 1037-39.

Upon a thorough review of the record and the applicable law, the Florida Supreme Court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

## VI. Conclusion

Like all trials, Petitioner's trial was not perfect. Moreover, the state's prosecutors needlessly pushed the envelope in several respects. Nevertheless, the evidence of Petitioner's guilt was overwhelming, he was represented at all phases by competent counsel and his trial and appeal were fundamentally fair.

Additionally, 28 U.S.C. § 2254(d) creates a highly deferential standard for federal court review of state court adjudications. Moreover, Petitioner's ineffective assistance of counsel claims are evaluated "[u]nder the doubly deferential judicial review that applies to

a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard." <u>Knowles</u>, 129 S.Ct. at 1420. Here, the state circuit court (which conducted an evidentiary hearing) and the Florida Supreme Court have thoroughly considered the same issues this Court is asked to review and have found that Petitioner is not entitled to post-conviction relief. This Court has now independently reviewed the substantial record and the applicable law and likewise concludes that Petitioner is not entitled to federal habeas relief because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Any claims not specifically addressed are found to be without merit. Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

## VII. Certificate of Appealability

If Petitioner appeals the denial of the Petition, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability on all claims.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      The Clerk of the Court shall close this case.

4.     If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 9th day of March, 2010.


TIMOTHY J. CORRIGAN
United States District Judge


ps 3/9
c:
Counsel of Record